# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| ARQUATI, S.R.L. (IN LIQUIDAZIONE) and ARQUATI COMPANY, USA, INC. | § § § § | CIVIL ACTION NO. |
| *Plaintiffs,* | § § § | |
| v. | § § | |
| CORRADI USA, INC., ALBERTO TANZI, BEATRICE ARQUATI, ERMES SANI, and UNIVERSAL WOOD MOULDING, INC., | § § § § § § | |
| *Defendants.* | § § § | |

---

## APPENDIX IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER, ORDER FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

---

Dated:    January 27, 2010          Respectfully submitted,

/s/Penelope Brobst Blackwell
Mary-Olga Lovett
State Bar No. 00789289
Penelope Brobst Blackwell
State Bar No. 24029456
GREENBERG TRAURIG, LLP
2200 Ross Avenue
Suite 5200
Dallas, Texas 75201
Tel:  (214) 665-3600
Fax:  (214) 665-3601

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ARQUATI, S.R.L. (IN LIQUIDAZIONE) and ARQUATI COMPANY, USA, INC. | § § § § § | CIVIL ACTION NO. |
| *Plaintiffs*, | § § | |
| v. | § § | |
| CORRADI USA, INC., ALBERTO TANZI, BEATRICE ARQUATI, ERMES SANI, and UNIVERSAL WOOD MOULDING, INC., | § § § § § § | |
| *Defendants*. | § § § | |

---

**APPENDIX IN SUPPORT OF PLAINTIFFS' APPLICATION FOR TEMPORARY RESTRAINING ORDER, ORDER FOR EXPEDITED DISCOVERY AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION**

---

| TAB NO. | DOCUMENT | APP. NO. |
|---|---|---|
| TAB 1 | Declaration of Daniel Feuerstein, with exhibits | 3 |
| TAB 2 | Declaration of Patrizio Pozzoli, with exhibits | 56 |
| TAB 3 | Declaration of Stephano Mosconi, with exhibits | 69 |

# TAB 1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| ARQUATI, S.R.L. (IN LIQUIDAZIONE) and ARQUATI COMPANY, USA, INC. | § § § | CIVIL ACTION NO. |
| *Plaintiffs,* | § § § | |
| v. | § § | |
| CORRADI USA, INC., ALBERTO TANZI, BEATRICE ARQUATI, ERMES SANI, and UNIVERSAL WOOD MOULDING, INC., | § § § § § § | |
| *Defendants.* | § § § | |

---

**DECLARATION OF DANIEL A. FEUERSTEIN IN SUPPORT OF PLAINTIFFS'
APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO
SHOW CAUSE FOR PRELIMINARY INJUNCTION**

---

I, Daniel A Feuerstein, under penalty of perjury, declares and says:

1.      I am Of Counsel with Greenberg Traurig, LLP, counsel for plaintiffs.

2.      I make this Declaration in support of Plaintiffs' Application for a Temporary

Restraining Order and Order to Show Cause for a Preliminary Injunction.

3.      Attached are true copies of the following documents:

| EXHIBIT | DESCRIPTION |
|---|---|
| A | Certificate of Registration No. 1,231,936, for the ARQUATI® Mark, retrieved from the webstite of the United States Patent and Trademark Office on January 26, 2010 |

**DECLARATION OF DANIEL FEUERSTEIN IN SUPPORT OT PLAINTIFFS' APPLICATION FOR A
TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY
INJUNCTION - PAGE 1**

*NJ 226,836,468v3 1-27-10*

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| B | Printout from www.arquatiusa.com, retrieved on January 26, 2010 Note that the website bears the ARQUATI® Mark and name, and contains "hot links" to the following websites: (i) www.corradi.eu; and (ii) www.universalarquati.com |
| C | Selected pages printed from the website/domain www.corradi.eu, retrieved on January 26, 2010 |
| D | Selected pages printed from the website/domain www.universalarquati.com, retrieved on January 27, 2010 |
| E | Selected pages printed from the authentic Arquati Italy website, www.arquati.it, retrieved on January 26, 2010 |
| F | Letters from Change Group to all Defendants, dated January 5, 2010, instructing Defendants to (among other things) stop using the Aruati Italy trademark |
| G | Letter from Messuri, Ratti, Trusendi & Co. to Corradi s.p.a., dated January 14, 2010 |
| H | Certified translation of Exhibit B to the Pozzoli Declaration (Power of Attorney, dated November 5, 2009) |
| I | Certified translation of Exhibit C to the Pozzoli Declaration (Power of Attorney, dated November 23, 2009) |
| J | Certified translation of Exhibit G, above (January 14, 2009 letter from Arquati's Italian Counsel to Corradi, s.p.a.) |
| K | Certified translation of Exhibit A to the Mosconi Declaration (November 4, 2009 Minutes of the Shareholders' Meeting) |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Daniel Feuerstein

Executed on:  January 27, 2010 at Florham Park, New Jersey

**DECLARATION OF DANIEL FEUERSTEIN IN SUPPORT OT PLAINTIFFS' APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION - PAGE 2**

*NJ 226,836,468v3 1-27-10*

# EXHIBIT A



**United States Patent and Trademark Office**

Home | Site Index | Search | FAQ | Glossary | Guides | Contacts | eBusiness | eBiz alerts | News | Help

## Trademarks > Trademark Electronic Search System (TESS)

*TESS was last updated on Tue Jan 26 04:04:16 EST 2010*

| TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | BOTTOM | HELP | PREV LIST | CURR LIST |

| NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Logout  Please logout when you are done to release system resources allocated for you.

Start  List At: [        ]  OR  Jump  to record: [        ]  **Record 2 out of 2**

| TARR Status | ASSIGN Status | TDR | TTAB Status |  ( *Use the "Back" button of the Internet* *Browser to return to TESS)*



| Word Mark | **ARQUATI** |
|---|---|
| Translations | There is no English translation of the word mark. |
| Goods and Services | IC 020. US 032. G & S: Furniture and Kits Consisting of Wood or Plastic for Making Furniture |
| | IC 024. US 042. G & S: Textile Curtains for Windows, Plastic Curtains, Blankets and Table Cloths |
| Mark Drawing Code | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| Design Search Code | 26.09.03 - Incomplete squares; Squares, incomplete
26.09.20 - Squares inside one another
26.09.21 - Squares that are completely or partially shaded |
| Serial Number | 73242797 |
| Filing Date | December 13, 1979 |
| Current Filing Basis | 44E |
| Original Filing Basis | 44E |
| Published for Opposition | December 28, 1982 |
| Change In Registration | CHANGE IN REGISTRATION HAS OCCURRED |
| Registration Number | 1231936 |
| Registration Date | March 22, 1983 |
| Owner | (REGISTRANT) ARQUATI, ETTORE INDIVIDUAL ITALY STRADELLA DI COLLECCHIO |

PARMA ITALY

(REGISTRANT) ARQUATI, ELIO INDIVIDUAL ITALY STRADELLA DI COLLECCHIO PARMA ITALY

(REGISTRANT) ARQUATI, FRANCO INDIVIDUAL ITALY STRADELLA DI COLLECCHIO PARMA ITALY

(LAST LISTED OWNER) Arquati, S. P. A. CORPORATION BY ASSIGNMENT ITALY 43038 Castellardo Do Sala Baganza Parma ITALY

| | |
|---|---|
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | JAMES V. COSTIGAN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 8 (6-YR). SECTION 8(10-YR) 20031017. |
| **Renewal** | 1ST RENEWAL 20031017 |
| **Live/Dead Indicator** | LIVE |

TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | SEARCH OG | TOP | HELP | PREV LIST | CURR LIST

NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC

|.HOME | SITE INDEX| SEARCH | eBUSINESS | HELP | PRIVACY POLICY

# EXHIBIT B



# Exciting news!

December 1, 2009 marked an important day for Arquati USA! The acquisition of the SolarPro awning and solar screen division by Corradi USA, Inc. has caused a great deal of excitement. What this means to you - our customers - is more dynamic innovative products!

- *Patio cover systems*
- *Retractable roof systems*
- *Modern outdoor living products*
- *So much more!*

While their website is being constructed we urge you to visit **www.corradi.eu** to check out the beautiful products offered by Corradi USA. We guarantee you'll like what you see! **Call 972-466-0824 or 800-882-8393 for more information! Fax requests or orders to 972-466-0561 or 800-778-7329.**

**UNIVERSAL FRAMING PRODUCTS** has bought the Arquati MasterFrame and Arquati ProFrame divisions of the company to become UNIVERSAL - ARQUATI. What a great combination of a major volume distributor and the Arquati line with its beautiful and original styles of moulding with one of the highest reputations in the industry. The order desk is open and ready to serve you! **The new phone numbers for Universal Arquati are 972-428-3600 or 800-527-0421. You may also fax orders to 972-428-3608. Please take a moment to visit their website at www.universalarquati.com**

# EXHIBIT C

Home    Contacts    Map    Reserved area    IT | EN | FR | ES | DE



Products    Design    Dealers    Communication    Group    News

**CORRADI GROUP**
ORGANIZATION
CONTACTS
HOW TO REACH US
INFORMATION REQUEST
WORK WITH US



Company entrance                                          << 1 / 8 >>

Corradi Spa was born in Bologna in 1978 and plans and realises coverings and pergolas made to size, which decorate and exploit the outdoor. Corradi counts on approximately 100 coworkers on an area of 9000 sm. It supplies every year hundreds of retailers in Italy and in foreign countries and is an avantgarde reality in the sector. The company remains focused on producing high quality, sophisticated products which provide a unique, patented furnishing system that not only shields you from the sun, but also resists the more difficult weather conditions of wind and rain. The goal has been to create an alternative to the traditional sun awning by offering innovative, custom built products designed to create safe, elegant living spaces that you can enjoy all year round.

Since january 2009 Velombra Srl, specialised in the production of awning-sails, and Corradi Arredi Srl, for the production of outside furniture, are part of the Corradi Group.

**Certified quality system UNI EN ISO 9001:2000**
The certification of the quality system is the verification by a dedicated international institution (TÜV) of the company's internal processes, and therefore its organisational level. After a careful survey of all company areas the TÜV inspectors have given Corradi Spa the certificate (n. 50 100 7158).



Home     Contacts     Map     Reserved area     IT | EN | FR | ES | DE



 Products      Design     Dealers     Communication     Corradi     News

CORRADI GROUP
ORGANIZATION
**CONTACTS**
HOW TO REACH US
INFORMATION REQUEST
WORK WITH US



**PERGOLAS AND ACCESSORIES**

**Corradi Spa**
39, via G. Brini
40128 Bologna Italy

**Reception & Information**
T +39 051 4188411
F +39 051 4188400
E info@corradi.eu

**Export Office**
T +39 051 4188448
F +39 051 4188445
E export@corradi.eu

**Quality & Assistance**
T +39 051 4188452
F +39 051 4188455
E qualita@corradi.eu

**Administration**
T +39 051 4188422
F +39 051 4188400
E amministrazione@corradi.eu

**Corradi Project**
E cp@corradi.eu

**OUTDOOR FURNITURE**

**Corradi Arredi Srl**
40/42, via A. Casali
61122 Pesaro Italy
T +39 0721 287503
F +39 0721 220354
E arredi@corradi.eu

AWNING-SAILS

**Velombra Srl**
22/B, via Nicola Sacco
47100 Forlì Italy
T +39 0543 796617
F +39 0543 794339
E vele@corradi.eu

Home     Contacts     Map     Reserved area     IT | EN | FR | ES | DE



  



**PERGOTENDA COLLECTION**
- IMPACT
- ERMETIKA
- SLIDING GLASS DOORS
- MODULAR WOOD DECK
- LIGHTING
- VASES
- AWNING-SAILS
- OUTDOOR FURNITURE



**Pergotenda Millenium**

     

In 1998 Corradi created Pergotenda, the product born from the combination of a supporting structure in wood or aluminium and a sliding and water-resistant covering system, which may be opened or closed depending on weather conditions.

Pergotenda, made to size, has been planned to make your outdoor space elegant and cosy even with the most difficult weather conditions or strongest wind.

Pergotenda is available at Corradi's Authorized Dealers only.

To see the catalogue
More info

Home     Contacts     Map     Reserved area     IT | EN | FR | ES | DE



   Design   Dealers   Communication   Group   News

- ⊞ PERGOTENDA COLLECTION
  - IMPACT
  - ERMETIKA
  - SLIDING GLASS DOORS
  - MODULAR WOOD DECK
  - LIGHTING
  - VASES
- ⊟ AWNING-SAILS
- ⊞ **OUTDOOR FURNITURE**



From the experience of Corradi rises Corradi Arredi, a company specialized in outdoor furnishing.

Corradi Arredi offers 4 lines of products, which are realised using high-quality materials and always paying attention to the details. Following the style of Corradi, these products can perfectly combine modern design and high functionality: some design solutions, as the magazine rack built in the armchairs for example, meet perfectly the daily needs of the users.

Furthermore, the wide range of tissues used for armchairs and cushions, which includes some Ken Scotts, makes Corradi Arredi collections able to satisfy even the most demanding customers.

To see the catalogue
More info

Contacts    Map    Reserved area    IT | EN | FR | ES | DE



 Products     Design     Dealers     Communication     Group     News




**PERGOTENDA® COLLECTION**



**AWNING-SAILS**



**OUTDOOR FURNITURE**



Corradi wants to brave the sea
**TRANSAT 6.50**

Corradi Spa | 39, via G. Brini 40128 Bologna Italy | T +39 051 4188411 | F +39 051 4188445 | Vat N. 02129110371



# EXHIBIT D



| product | about us | terms & conditions | news room | contact | Search | GO |



Universal Framing Products is a national distributor of exclusive quality picture frame mouldings at value prices.

Universal Framing Products was born out of the inspiration to bring high quality picture frame moulding at value prices to the picture frame industry. Today our goal remains the same – we stock large quantities of over 1000 moulding styles in a host of designs and finishes - all at value prices. Our collection features a large selection of the latest styles as well as those classic, timeless shapes you can use time and time again. We also stock one of the largest collections of polystyrene – our Valucore™ line.

At UFP we are dedicated to developing moulding that represents the latest trends in picture framing.   To view our latest collections, please view our "new collection" section on our website.  Our new website includes a complete interactive catalog for easy moulding reference.  We hope you enjoy your experience at Universal Framing Products.

Copyright 2010  Universal Framing Products



| product | about us | terms & conditions | news room | contact | Search |



Universal Framing Products is a national distributor of exclusive quality picture frame mouldings.

Universal Framing Products was born out of the inspiration to bring high quality picture frame moulding at value prices to the picture frame industry. Today our goal remains the same – we stock large quantities of over 1000 moulding styles in a host of designs and finishes - all at a great value. Our collection features a large selection of the latest styles as well as those classic, timeless shapes you can use time and time again. We also stock one of the largest collections of polystyrene – our Valucore™ line.

At UFP we are dedicated to developing moulding that represents the latest trends in picture framing. To view our latest collections, please view our "new collection" section on our website. Our new website includes a complete interactive catalog for easy moulding reference. We hope you enjoy your experience at Universal Framing Products.

Copyright 2010 Universal Framing Products



| product | about us | terms & conditions | news room | contact | Search |

**Contact Us**

Your Name

Email

Subject

Company

Phone

Address

Address Line 2

City

Zip/PostCode

State/Province

Please Send Me a Catalog ☐

Message

Send

Headquarters:

Universal Framing Products
21139 Centre Pointe Pkwy
Santa Clarita
CA 91350
US
www.universalframing.com

P: 661.362.6262
F: 661.362.6263
**800.668.3627**

East Cost Facility:

69 Veronica Avenue, Unit 8
Somerset, NJ 08873

P: 732.246.1538
F: 732.246.1587

Copyright 2010  Universal Framing Products

# EXHIBIT E



> **TENDE DA ESTERNO**

- Tende a bracci
- Tende a caduta
- Tende a capottina
- Grandi coperture

> **TENDE DA INTERNO**

- Veneziane
- A rullo
- Plissé
- Verticali
- Tendaggi
- Tessuti da arredamento e decorazione
- Tessuti antifiamma
- Scorritenda e bastoni
- Wintergarden

**Novità da Arquati**

**Chiusura Aziendale Natalizia**

Vi comunichiamo che, in corrispondenza delle festività natalizie, l'Azienda resterà chiusa dal 23 dicembre al 5 gennaio inclusi. L'ULTIMO GIORNO DI CONSEGNA SIA CON IL...

» **leggi**



**GRANDE SUCCESSO DELLO STAND ARQUATI A T&T**

Home | Azienda | Qualità e Sicurezza | Trova Rivenditori | Community | Newsletter | Mappa del sito | Contatti

Copyright by Arquati S.p.A. - P.IVA 00217250349 Tutti i diritti riservati



Homepage
Qualità e sicurezza
Trova rivenditori

Cerca nel sito:

Vai

SEI QUI: home > contatti

## Contatti
### Indirizzo, telefono, email.

Per contattare Arquati S.p.A. é possibile utilizzare i seguenti recapiti:

**Come contattarci**
recapiti telefonici

**Numero verde:**

Numero Verde
800 386386

**Indirizzi Utili**
indirizzi e recapiti email

**Indirizzo**
Arquati S.p.A. via San Vitale, 3
43038 Sala Baganza (PR)

clicca per ingrandire la mappa

**E-mail**
info@arquati.it

Tuo indirizzo email:

Nome e cognome:

Richiesta informazioni:

☐ Acconsento al trattamento dei dati personali.
☒ PRIVACY

Invia richiesta

Newsletter Arquati
» Sconti, anticipazioni e novità
direttamente nella tua email
ISCRIVITI SUBITO! ›

Seleziona il rivenditore più vicino
ed acquista la tua tenda Arquati.

Vai

› **Tende da esterno**
Clicca per accedere alle
soluzioni Arquati per
l'arredo esterno.
Entra ›

› **Tende da interno**
Clicca per accedere alle
soluzioni Arquati per
l'arredo interno.
Entra ›

Copyright by Arquati S.p.A. - P.IVA 00217250349 Tutti i diritti riservati



Cerca nel sito:

**Vai**

SEI QUI: home > **Area riservata**

## Community Arquati
### Le migliori foto dai clienti Arquati.

**Vuoi spedire le tue immagini ad Arquati?**
**Diventa anche tu parte della community.**

**GALLERIA COMMUNITY**

E' in allestimento una vetrina dedicata ai vostri ambienti arredati con le tende da sole e arredamento interno.
Invia anche tu le foto della tua casa arricchita di una tenda Arquati.
Le foto più belle saranno pubblicate nella gallery online oppure potranno far parte del prossimo catalogo Arquati!

**INVIA LE TUE IMMAGINI**

Seleziona dal tuo hard disk la foto della tua tenda in formato JPG o GIF.

**Ambiente senza tenda Arquati**

Browse...

**Ambiente arredato con Arquati**

Browse...

**ATTENZIONE:**
le immagini verranno sottoposte a valutazione.

Compila il modulo qui di seguito con i tuoi dati e invia sul sito l'immagine del tuo ambiente arredato con tenda Arquati. Le più belle verranno selezionate dal nostro team per essere pubblicate nella galleria online e sul prossimo catalogo Arquati .

**Tutti i campi sono obbligatori.**
Nome

Cognome:

Indirizzo email:

Indirizzo e numero:

Città :

CAP:

Provincia:
Agrigento (AG)

☐ Acconsento al trattamento dei dati personali.
☑ PRIVACY

INVIA IMMAGINE

Home  |  Azienda  |  Qualità e Sicurezza  |  Trova Rivenditori  |  Community  |  Newsletter  |  Mappa del sito  |  Contatti
**Copyright by Arquati S.p.A. - P.IVA 00217250349 Tutti i diritti riservati**



# EXHIBIT F



Consulting • Research • Operations        chgus.com

January 5, 2010

Mr. Alberto Tanzi
c/o Arquati Company USA Inc.
1433 West Frankford Road – Suite 100
Carrollton, TX 75007
*(All copied parties listed below.)*

Dear Sir:

In subsequent examination of the transactions effectuated December 1, 2009 pertaining to the Trademark License Agreement, counterpart of two Asset Purchase Agreements also with effective date December 1, 2009, engaging Arquati SRL (Italy), Arquati Company USA, Corradi USA Inc. and Universal Wood Moulding Inc., Change Group Americas has been hereby retained to serve any and all interests of Arquati SRL (Italy) in the United States, including the dispute of the legitimacy and validity of the agreements aforesaid.

In brief, Mr. Alfredo Bertone was appointed and authorized as Liquidator of the companies pertaining to Arquati SRL who, in turn, yielded Power of Attorney to Mr. Ermes Sani, and acting only in the interest of the Arquati SRL companies, Mr. Ermes Sani was to liquidate and/or sell said companies at <u>best value</u>, thereby removing the President(s) of these companies as part of the conditions of the liquidation process.  Evidence demonstrates that not only were the aforenamed agreements in direct defiance of the sanctions in which under no circumstances was the licensing of the Arquati SRL Trademark negotiable or remotely considered to be negotiable, but that said agreements are also in violation of said sanctions and Mr. Sani's Power of Attorney and fiduciary responsibility. Usurping the basic directives under his Power of Attorney, Mr. Sani and other parties acted illicitly and inappropriately, thus causing any and all parts of the abovementioned agreements to be considered null, void and invalid for any and all purposes.  <u>The Arquati SRL Trademark remains the sole property of Arquati SRL.</u>

Concerning the above imputed grievances, you are accordingly notified that Change Group Americas has retained **Greenberg Traurig LLP** to commence any action necessary in the United States to protect the assets of Arquati SRL and its shareholders.  Such actions could include, but are not limited to, a law suit in a United States federal court instituted <u>against the Officers, Board of Directors and fiduciaries of Arquati USA, including Alberto Tanzi and Ermes Sani, acting as President of Arquati Company USA, and against any and all parties nominated in this letter,</u> for breach of fiduciary duty, corporate theft, unjust enrichment, conflict of interest, and to thereby void any sales transactions between Arquati Company USA and third parties as fraudulent conveyances, outside the scope of Sani's authority and as an ultra vires act, and a possible foreign proceeding under Chapter 15 of the United States Bankruptcy Code.

Until a definitive resolution is obtained, you are further advised to: **a)** desist from using the Arquati SRL Trademark; **b)** alert all pertinent third parties involved of this notification and effects, thereof; and **c)** immediately remove any information from marketing and/or other materials, including websites, pertaining to the acquisition of Arquati Company USA and/or merger of Arquati Company USA with Corradi USA Inc. and/or Universal Wood Moulding Inc.

Furthermore and pursuant to our agreement with Arquati SRL, **Change Group Americas will audit** the activities of Arquati Company USA, and herewith petitions you to provide full disclosure of and substantiate all financial decisions, expenses, transactions and/or claims made prior to December 1, 2009, as a company of and pertaining to Arquati SRL.  To commence the process, we request: tax returns for years 2007 and 2008, and interim year-end financials (balance sheet, profit and loss statement and statement of cashflow) for the year 2009;

International HQ    111 John Street, 19th Floor   New York, NY 10038
Main:  212.96CHGUS   Toll Free: 877.223.0920   F: 212.962.4478

*Page 2*
*Tanzi, Alberto*

additionally, we will require all bank statements for any bank accounts in which Arquati Company USA is an authorized signatory for years 2007-2009. The information should be sent to our offices within 10 business days

of receipt of this notification. If Arquati Company USA adopted a fiscal-year reporting, please advise otherwise and add to the above request all necessary interim information and data. Failure to comply with this requisition will result in immediate action.

Finally, we request a meeting with you within 10 business days either at the Arquati Company USA facility in Texas or at our offices in New York to make one final attempt to discuss and resolve this matter. Please acknowledge receipt and confirmation of the location, date and time of this meeting within 48 hours of receipt of this notification. Failure to respond and/or concert a meeting with us will force us to take immediate legal action on behalf of Arquati SRL.

I can be reached at (212) 962-4487, ext. 106 to further discuss the meeting arrangements. Should you have any questions, please do not hesitate to contact me.

Sincerely,


Zeynep Ivet Bandirma, Director
Change Group Americas

### Original notifications presented to:

Corradi USA Inc.
1433 W. Frankford Rd. – Suite 100
Carrollton, TX 75007

Universal Wood Moulding Inc.
21139 Centre Point Pkwy.
Santa Clarita, CA 91350

Arquati Company USA Inc.
1433 W. Frankford Rd. – Suite 100
Carrollton, TX 75007

Mr. Alberto Tanzi
c/o Corradi USA Inc.
1433 W. Frankford Rd. – Suite 100
Carrollton, TX 75007

Mr. Ermes Sani
c/o Arquati Company USA Inc.
1433 W. Frankford Rd. – Suite 100
Carrollton, TX 75007

Mr. Jon Bromberg
c/o Universal Wood Moulding Inc.
21139 Centre Point Pkwy.
Santa Clarita, CA 91350

### Courtesy Copies presented to:

Dr. Beverly Lubit, Shareholder
Greenberg Traurig LLP
200 Park Avenue
Florham Park, NJ 07032

Dr. Christian Visdomini, CEO
Change Group Americas
(Internal)

Ms. Melissa Murillo, Implementation Director
Change Group Americas
(Internal)

Compliance Department
Change Group Americas
(Internal)

Massimiliano Ratti, Esq.
Studio Legale Associato Messuri Ratti e C.
Via XX Settembre, 66
19121 La Spezia
Italy

Mr. Alberto Bertone
c/o Studio Legale Associato Messuri Ratti e C.
(Ibidem)

---



Consulting • Research • Operations      chgus.com

January 5, 2010

Corradi USA Inc.
1433 West Frankford Road – Suite 100
Carrollton, TX 75007
*(All copied parties listed below.)*

Dear Sirs:

In subsequent examination of the transactions effectuated December 1, 2009 pertaining to the Trademark License Agreement, counterpart of two Asset Purchase Agreements also with effective date December 1, 2009, engaging Arquati SRL (Italy), Arquati Company USA, Corradi USA Inc. and Universal Wood Moulding Inc., Change Group Americas has been hereby instituted to serve any and all interests of Arquati SRL (Italy) in the United States, including the dispute of the legitimacy and validity of the agreements aforesaid.

In brief, Mr. Alfredo Bertone was appointed and authorized as Liquidator of the companies pertaining to Arquati SRL who, in turn, yielded Power of Attorney to Mr. Ermes Sani, and acting only in the interest of the Arquati SRL companies, Mr. Ermes Sani was to liquidate and/or sell said companies at <u>best value</u>, thereby removing the President(s) of these companies as part of the conditions of the liquidation process. Evidence demonstrates that not only were the aforenamed agreements in direct defiance of the sanctions in which under no circumstances was the licensing of the Arquati SRL Trademark negotiable or remotely considered to be negotiable, but that said agreements are also in violation of said sanctions and Mr. Sani's Power of Attorney and fiduciary responsibility. Usurping the basic directives under his Power of Attorney, Mr. Sani and other parties acted illicitly and inappropriately, thus causing any and all parts of the abovementioned agreements to be considered null, void and invalid for any and all purposes. <u>The Arquati SRL Trademark remains the sole property of Arquati SRL.</u>

Concerning the above imputed grievances, you are accordingly notified that Change Group Americas has retained **Greenberg Traurig LLP** to commence any action necessary in the United States to protect the assets of Arquati SRL and its shareholders. Such actions could include, but are not limited to, a law suit in a United States federal court instituted <u>against the Officers, Board of Directors and fiduciaries of Arquati USA, including Alberto Tanzi and Ermes Sani, acting as President of Arquati Company USA, and against any and all parties nominated in this letter,</u> for breach of fiduciary duty, corporate theft, unjust enrichment, conflict of interest, and to thereby void any sales transactions between Arquati Company USA and third parties as fraudulent conveyances, outside the scope of Sani's authority and as an ultra vires act, and a possible foreign proceeding under Chapter 15 of the United States Bankruptcy Code.

Until a definitive resolution is obtained, you are further advised to: **a)** desist from using the Arquati SRL Trademark; **b)** alert all pertinent third parties involved of this notification and effects, thereof; and **c)** immediately remove any information from marketing and/or other materials, including websites, pertaining to the acquisition of Arquati Company USA and/or merger of Arquati Company USA with Corradi USA Inc. and/or Universal Wood Moulding Inc.

Furthermore and pursuant to our agreement with Arquati SRL, **Change Group Americas will audit** the activities of Arquati Company USA, and herewith petitions you to provide full disclosure of and substantiate all financial decisions, expenses, transactions and/or claims made prior to December 1, 2009, as a company of and pertaining to Arquati SRL. To commence the process, we request: tax returns for years 2007 and 2008, and interim year-end financials (balance sheet, profit and loss statement and statement of cashflow) for the year 2009;

---

International HQ    111 John Street, 19th Floor    New York, NY 10038
Main: 212.96CHGUS    Toll Free: 877.223.0920    F: 212.962.4478

*Page 2*
*Corradi USA Inc.*

additionally, we will require all bank statements for any bank accounts in which Arquati Company USA is an authorized signatory for years 2007-2009. The information should be sent to our offices <u>within 10 business days</u>

of receipt of this notification. If Arquati Company USA adopted a fiscal-year reporting, please advise otherwise and add to the above request all necessary interim information and data. Failure to comply with this requisition will result in immediate action.

Finally, we request a meeting with you <u>within 10 business days</u> either at the Arquati Company USA facility in Texas or at our offices in New York to make one final attempt to discuss and resolve this matter. Please acknowledge receipt and confirmation of the location, date and time of this meeting <u>within 48 hours</u> of receipt of this notification. Failure to respond and/or concert a meeting with us will force us to take immediate legal action on behalf of Arquati SRL.

I can be reached at (212) 962-4487, ext. 106 to further discuss the meeting arrangements. Should you have any questions, please do not hesitate to contact me.

Sincerely,



Zeynep Ivet Bandirma, Director
Change Group Americas

## Original notifications presented to: | Courtesy Copies presented to:

| **Original notifications presented to:** | | **Courtesy Copies presented to:** |
|---|---|---|
| Arquati Company USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007 | Mr. Jon Bromberg<br>c/o Universal Wood Moulding Inc.<br>21139 Centre Point Pkwy.<br>Santa Clarita, CA 91350 | Dr. Beverly Lubit, Shareholder<br>Greenberg Traurig LLP<br>200 Park Avenue<br>Florham Park, NJ 07032 |
| Universal Wood Moulding Inc.<br>21139 Centre Point Pkwy.<br>Santa Clarita, CA 91350 | | Dr. Christian Visdomini, CEO<br>Change Group Americas<br>(Internal) |
| Mr. Alberto Tanzi<br>c/o Arquati Company USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007 | | Ms. Melissa Murillo, Implementation Director<br>Change Group Americas<br>(Internal) |
| Mr. Alberto Tanzi<br>c/o Corradi USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007 | | Compliance Department<br>Change Group Americas<br>(Internal) |
| Mr. Ermes Sani<br>c/o Arquati Company USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007 | | Massimiliano Ratti, Esq.<br>Studio Legale Associato Messuri Ratti e C.<br>Via XX Settembre, 66<br>19121 La Spezia<br>Italy |
| | | Mr. Alberto Bertone<br>c/o Studio Legale Associato Messuri Ratti e C.<br>(Ibidem) |



Consulting • Research • Operations      chgus.com

January 5, 2010

Mr. Alberto Tanzi
c/o Corradi USA Inc.
1433 West Frankford Road – Suite 100
Carrollton, TX 75007
*(All copied parties listed below.)*

Dear Sir:

In subsequent examination of the transactions effectuated December 1, 2009 pertaining to the Trademark License Agreement, counterpart of two Asset Purchase Agreements also with effective date December 1, 2009, engaging Arquati SRL (Italy), Arquati Company USA, Corradi USA Inc. and Universal Wood Moulding Inc., Change Group Americas has been hereby retained to serve any and all interests of Arquati SRL (Italy) in the United States, including the dispute of the legitimacy and validity of the agreements aforesaid.

In brief, Mr. Alfredo Bertone was appointed and authorized as Liquidator of the companies pertaining to Arquati SRL who, in turn, yielded Power of Attorney to Mr. Ermes Sani, and acting only in the interest of the Arquati SRL companies, Mr. Ermes Sani was to liquidate and/or sell said companies at best value, thereby removing the President(s) of these companies as part of the conditions of the liquidation process. Evidence demonstrates that not only were the aforenamed agreements in direct defiance of the sanctions in which under no circumstances was the licensing of the Arquati SRL Trademark negotiable or remotely considered to be negotiable, but that said agreements are also in violation of said sanctions and Mr. Sani's Power of Attorney and fiduciary responsibility. Usurping the basic directives under his Power of Attorney, Mr. Sani and other parties acted illicitly and inappropriately, thus causing any and all parts of the abovementioned agreements to be considered null, void and invalid for any and all purposes. <u>The Arquati SRL Trademark remains the sole property of Arquati SRL.</u>

Concerning the above imputed grievances, you are accordingly notified that Change Group Americas has retained **Greenberg Traurig LLP** to commence any action necessary in the United States to protect the assets of Arquati SRL and its shareholders. Such actions could include, but are not limited to, a law suit in a United States federal court instituted <u>against the Officers, Board of Directors and fiduciaries of Arquati USA, including Alberto Tanzi and Ermes Sani, acting as President of Arquati Company USA, and against any and all parties nominated in this letter,</u> for breach of fiduciary duty, corporate theft, unjust enrichment, conflict of interest, and to thereby void any sales transactions between Arquati Company USA and third parties as fraudulent conveyances, outside the scope of Sani's authority and as an ultra vires act, and a possible foreign proceeding under Chapter 15 of the United States Bankruptcy Code.

Until a definitive resolution is obtained, you are further advised to: **a)** desist from using the Arquati SRL Trademark; **b)** alert all pertinent third parties involved of this notification and effects, thereof; and **c)** immediately remove any information from marketing and/or other materials, including websites, pertaining to the acquisition of Arquati Company USA and/or merger of Arquati Company USA with Corradi USA Inc. and/or Universal Wood Moulding Inc.

Furthermore and pursuant to our agreement with Arquati SRL, **Change Group Americas will audit** the activities of Arquati Company USA, and herewith petitions you to provide full disclosure of and substantiate all financial decisions, expenses, transactions and/or claims made prior to December 1, 2009, as a company of and pertaining to Arquati SRL. To commence the process, we request: tax returns for years 2007 and 2008, and interim year-end financials (balance sheet, profit and loss statement and statement of cashflow) for the year 2009;

International HQ    111 John Street, 19th Floor    New York, NY 10038
Main: 212.96CHGUS   Toll Free: 877.223.0920   F: 212.962.4478

Page 31

*Page 2*
*Tanzi, Alberto*

additionally, we will require all bank statements for any bank accounts in which Arquati Company USA is an authorized signatory for years 2007-2009. The information should be sent to our offices within 10 business days

of receipt of this notification. If Arquati Company USA adopted a fiscal-year reporting, please advise otherwise and add to the above request all necessary interim information and data. Failure to comply with this requisition will result in immediate action.

Finally, we request a meeting with you within 10 business days either at the Arquati Company USA facility in Texas or at our offices in New York to make one final attempt to discuss and resolve this matter. Please acknowledge receipt and confirmation of the location, date and time of this meeting within 48 hours of receipt of this notification. Failure to respond and/or concert a meeting with us will force us to take immediate legal action on behalf of Arquati SRL.

I can be reached at (212) 962-4487, ext. 106 to further discuss the meeting arrangements. Should you have any questions, please do not hesitate to contact me.

Sincerely,


Zeynep Ivet Bandirma, Director
Change Group Americas

<table>
<tr><td colspan="2" align="center">**Original notifications presented to:**</td><td align="center">**Courtesy Copies presented to:**</td></tr>
<tr>
<td valign="top">
Arquati Company USA Inc.<br>
1433 W. Frankford Rd. – Suite 100<br>
Carrollton, TX 75007<br><br>
Corradi USA Inc.<br>
1433 W. Frankford Rd. – Suite 100<br>
Carrollton, TX 75007<br><br>
Universal Wood Moulding Inc.<br>
21139 Centre Point Pkwy.<br>
Santa Clarita, CA 91350<br><br>
Mr. Alberto Tanzi<br>
c/o Arquati Company USA Inc.<br>
1433 W. Frankford Rd. – Suite 100<br>
Carrollton, TX 75007<br><br>
Mr. Ermes Sani<br>
c/o Arquati Company USA Inc.<br>
1433 W. Frankford Rd. – Suite 100<br>
Carrollton, TX 75007
</td>
<td valign="top">
Mr. Jon Bromberg<br>
c/o Universal Wood Moulding Inc.<br>
21139 Centre Point Pkwy.<br>
Santa Clarita, CA 91350
</td>
<td valign="top">
Dr. Beverly Lubit, Shareholder<br>
Greenberg Traurig LLP<br>
200 Park Avenue<br>
Florham Park, NJ 07032<br><br>
Dr. Christian Visdomini, CEO<br>
Change Group Americas<br>
(Internal)<br><br>
Ms. Melissa Murillo, Implementation Director<br>
Change Group Americas<br>
(Internal)<br><br>
Compliance Department<br>
Change Group Americas<br>
(Internal)<br><br>
Massimiliano Ratti, Esq.<br>
Studio Legale Associato Messuri Ratti e C.<br>
Via XX Settembre, 66<br>
19121 La Spezia<br>
Italy<br><br>
Mr. Alberto Bertone<br>
c/o Studio Legale Associato Messuri Ratti e C.<br>
(Ibidem)
</td>
</tr>
</table>



Consulting • Research • Operations        chgus.com

January 5, 2010

Universal Wood Moulding Inc.
21139 Centre Point Pkwy.
Santa Clarita, CA 91350
*(All copied parties listed below.)*

Dear Sir:

In subsequent examination of the transactions effectuated December 1, 2009 pertaining to the Trademark License Agreement, counterpart of two Asset Purchase Agreements also with effective date December 1, 2009, engaging Arquati SRL (Italy), Arquati Company USA, Corradi USA Inc. and Universal Wood Moulding Inc., Change Group Americas has been hereby retained to serve any and all interests of Arquati SRL (Italy) in the United States, including the dispute of the legitimacy and validity of the agreements aforesaid.

In brief, Mr. Alfredo Bertone was appointed and authorized as Liquidator of the companies pertaining to Arquati SRL who, in turn, yielded Power of Attorney to Mr. Ermes Sani, and acting only in the interest of the Arquati SRL companies, Mr. Ermes Sani was to liquidate and/or sell said companies at <u>best value</u>, thereby removing the President(s) of these companies as part of the conditions of the liquidation process. Evidence demonstrates that not only were the aforenamed agreements in direct defiance of the sanctions in which under no circumstances was the licensing of the Arquati SRL Trademark negotiable or remotely considered to be negotiable, but that said agreements are also in violation of said sanctions and Mr. Sani's Power of Attorney and fiduciary responsibility. Usurping the basic directives under his Power of Attorney, Mr. Sani and other parties acted illicitly and inappropriately, thus causing any and all parts of the abovementioned agreements to be considered null, void and invalid for any and all purposes. <u>**The Arquati SRL Trademark remains the sole property of Arquati SRL.**</u>

Concerning the above imputed grievances, you are accordingly notified that Change Group Americas has retained **Greenberg Traurig LLP** to commence any action necessary in the United States to protect the assets of Arquati SRL and its shareholders. Such actions could include, but are not limited to, a law suit in a United States federal court instituted <u>against the Officers, Board of Directors and fiduciaries of Arquati USA, including Alberto Tanzi and Ermes Sani, acting as President of Arquati Company USA, and against any and all parties nominated in this letter,</u> for breach of fiduciary duty, corporate theft, unjust enrichment, conflict of interest, and to thereby void any sales transactions between Arquati Company USA and third parties as fraudulent conveyances, outside the scope of Sani's authority and as an ultra vires act, and a possible foreign proceeding under Chapter 15 of the United States Bankruptcy Code.

Until a definitive resolution is obtained, you are further advised to: a) desist from using the Arquati SRL Trademark; b) alert all pertinent third parties involved of this notification and effects, thereof; and c) immediately remove any information from marketing and/or other materials, including websites, pertaining to the acquisition of Arquati Company USA and/or merger of Arquati Company USA with Corradi USA Inc. and/or Universal Wood Moulding Inc.

Furthermore and pursuant to our agreement with Arquati SRL, **Change Group Americas will audit** the activities of Arquati Company USA, and herewith petitions you to provide full disclosure of and substantiate all financial decisions, expenses, transactions and/or claims made prior to December 1, 2009, as a company of and pertaining to Arquati SRL. To commence the process, we request: tax returns for years 2007 and 2008, and interim year-end financials (balance sheet, profit and loss statement and statement of cashflow) for the year 2009;

---

International HQ    111 John Street, 19th Floor    New York, NY 10038
Main: 212.96CHGUS    Toll Free: 877.223.0920    F: 212.962.4478

Page 33

*Page 2*
*Universal Wood Moulding Inc.*

additionally, we will require all bank statements for any bank accounts in which Arquati Company USA is an authorized signatory for years 2007-2009. The information should be sent to our offices within 10 business days

of receipt of this notification. If Arquati Company USA adopted a fiscal-year reporting, please advise otherwise and add to the above request all necessary interim information and data. Failure to comply with this requisition will result in immediate action.

Finally, we request a meeting with you within 10 business days either at the Arquati Company USA facility in Texas or at our offices in New York to make one final attempt to discuss and resolve this matter. Please acknowledge receipt and confirmation of the location, date and time of this meeting within 48 hours of receipt of this notification. Failure to respond and/or concert a meeting with us will force us to take immediate legal action on behalf of Arquati SRL.

I can be reached at (212) 962-4487, ext. 106 to further discuss the meeting arrangements. Should you have any questions, please do not hesitate to contact me.

Sincerely,


Zeynep Ivet Bandirma, Director
Change Group Americas

<table>
<tr><td colspan="2" align="center">**Original notifications presented to:**</td><td align="center">**Courtesy Copies presented to:**</td></tr>
<tr><td>Arquati Company USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007</td><td>Mr. Jon Bromberg<br>c/o Universal Wood Moulding Inc.<br>21139 Centre Point Pkwy.<br>Santa Clarita, CA 91350</td><td>Dr. Beverly Lubit, Shareholder<br>Greenberg Traurig LLP<br>200 Park Avenue<br>Florham Park, NJ 07032</td></tr>
<tr><td>Corradi USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007</td><td></td><td>Dr. Christian Visdomini, CEO<br>Change Group Americas<br>(Internal)</td></tr>
<tr><td>Mr. Alberto Tanzi<br>c/o Arquati Company USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007</td><td></td><td>Ms. Melissa Murillo, Implementation Director<br>Change Group Americas<br>(Internal)</td></tr>
<tr><td>Mr. Alberto Tanzi<br>c/o Corradi USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007</td><td></td><td>Compliance Department<br>Change Group Americas<br>(Internal)</td></tr>
<tr><td>Mr. Ermes Sani<br>c/o Arquati Company USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007</td><td></td><td>Massimiliano Ratti, Esq.<br>Studio Legale Associato Messuri Ratti e C.<br>Via XX Settembre, 66<br>19121 La Spezia<br>Italy</td></tr>
<tr><td></td><td></td><td>Mr. Alberto Bertone<br>c/o Studio Legale Associato Messuri Ratti e C.<br>(Ibidem)</td></tr>
</table>

International HQ    111 John Street, 19th Floor    New York, NY 10038
Main: 212.96CHGUS    Toll Free: 877.223.0920    F: 212.962.4478



Consulting • Research • Operations        chgus.com

January 5, 2010

Mr. Jon Bromberg
c/o Universal Wood Moulding Inc.
21139 Centre Point Pkwy.
Santa Clarita, CA 91350
*(All copied parties listed below.)*

Dear Sir:

In subsequent examination of the transactions effectuated December 1, 2009 pertaining to the Trademark License Agreement, counterpart of two Asset Purchase Agreements also with effective date December 1, 2009, engaging Arquati SRL (Italy), Arquati Company USA, Corradi USA Inc. and Universal Wood Moulding Inc., Change Group Americas has been hereby retained to serve any and all interests of Arquati SRL (Italy) in the United States, including the dispute of the legitimacy and validity of the agreements aforesaid.

In brief, Mr. Alfredo Bertone was appointed and authorized as Liquidator of the companies pertaining to Arquati SRL who, in turn, yielded Power of Attorney to Mr. Ermes Sani, and acting only in the interest of the Arquati SRL companies, Mr. Ermes Sani was to liquidate and/or sell said companies at best value, thereby removing the President(s) of these companies as part of the conditions of the liquidation process. Evidence demonstrates that not only were the aforenamed agreements in direct defiance of the sanctions in which under no circumstances was the licensing of the Arquati SRL Trademark negotiable or remotely considered to be negotiable, but that said agreements are also in violation of said sanctions and Mr. Sani's Power of Attorney and fiduciary responsibility. Usurping the basic directives under his Power of Attorney, Mr. Sani and other parties acted illicitly and inappropriately, thus causing any and all parts of the abovementioned agreements to be considered null, void and invalid for any and all purposes. <u>The Arquati SRL Trademark remains the sole property of Arquati SRL.</u>

Concerning the above imputed grievances, you are accordingly notified that Change Group Americas has retained **Greenberg Traurig LLP** to commence any action necessary in the United States to protect the assets of Arquati SRL and its shareholders. Such actions could include, but are not limited to, a law suit in a United States federal court instituted <u>against the Officers, Board of Directors and fiduciaries of Arquati USA, including Alberto Tanzi and Ermes Sani, acting as President of Arquati Company USA, and against any and all parties nominated in this letter</u>, for breach of fiduciary duty, corporate theft, unjust enrichment, conflict of interest, and to thereby void any sales transactions between Arquati Company USA and third parties as fraudulent conveyances, outside the scope of Sani's authority and as an ultra vires act, and a possible foreign proceeding under Chapter 15 of the United States Bankruptcy Code.

Until a definitive resolution is obtained, you are further advised to: **a)** desist from using the Arquati SRL Trademark; **b)** alert all pertinent third parties involved of this notification and effects, thereof; and **c)** immediately remove any information from marketing and/or other materials, including websites, pertaining to the acquisition of Arquati Company USA and/or merger of Arquati Company USA with Corradi USA Inc. and/or Universal Wood Moulding Inc.

Furthermore and pursuant to our agreement with Arquati SRL, **Change Group Americas will audit** the activities of Arquati Company USA, and herewith petitions you to provide full disclosure of and substantiate all financial decisions, expenses, transactions and/or claims made prior to December 1, 2009, as a company of and pertaining to Arquati SRL. To commence the process, we request: tax returns for years 2007 and 2008, and interim year-end financials (balance sheet, profit and loss statement and statement of cashflow) for the year 2009;

International HQ    111 John Street, 19th Floor   New York, NY 10038
Main: 212.96CHGUS    Toll Free: 877.223.0920    F: 212.962.4478

*Page 2*
*Bromberg, Jon*

additionally, we will require all bank statements for any bank accounts in which Arquati Company USA is an authorized signatory for years 2007-2009. The information should be sent to our offices within 10 business days

of receipt of this notification. If Arquati Company USA adopted a fiscal-year reporting, please advise otherwise and add to the above request all necessary interim information and data. Failure to comply with this requisition will result in immediate action.

Finally, we request a meeting with you within 10 business days either at the Arquati Company USA facility in Texas or at our offices in New York to make one final attempt to discuss and resolve this matter. Please acknowledge receipt and confirmation of the location, date and time of this meeting within 48 hours of receipt of this notification. Failure to respond and/or concert a meeting with us will force us to take immediate legal action on behalf of Arquati SRL.

I can be reached at (212) 962-4487, ext. 106 to further discuss the meeting arrangements. Should you have any questions, please do not hesitate to contact me.

Sincerely,


Zeynep Ivet Bandirma, Director
Change Group Americas

**Original notifications presented to:**                                **Courtesy Copies presented to:**

Arquati Company USA Inc.          Mr. Ermes Sani                    Dr. Beverly Lubit, Shareholder
1433 W. Frankford Rd. – Suite 100  c/o Arquati Company USA Inc.       Greenberg Traurig LLP
Carrollton, TX 75007              1433 W. Frankford Rd. – Suite 100  200 Park Avenue
                                  Carrollton, TX 75007              Florham Park, NJ 07032
Corradi USA Inc.
1433 W. Frankford Rd. – Suite 100                                    Dr. Christian Visdomini, CEO
Carrollton, TX 75007                                                Change Group Americas
                                                                    (Internal)
Universal Wood Moulding Inc.
21139 Centre Point Pkwy.                                             Ms. Melissa Murillo, Implementation Director
Santa Clarita, CA 91350                                             Change Group Americas
                                                                    (Internal)
Mr. Alberto Tanzi
c/o Arquati Company USA Inc.                                         Compliance Department
1433 W. Frankford Rd. – Suite 100                                   Change Group Americas
Carrollton, TX 75007                                                (Internal)

Mr. Alberto Tanzi                                                   Massimiliano Ratti, Esq.
c/o Corradi USA Inc.                                                Studio Legale Associato Messuri Ratti e C.
1433 W. Frankford Rd. – Suite 100                                   Via XX Settembre, 66
Carrollton, TX 75007                                                19121 La Spezia
                                                                    Italy

                                                                    Mr. Alberto Bertone
                                                                    c/o Studio Legale Associato Messuri Ratti e C.
                                                                    (Ibidem)



Consulting • Research • Operations        chgus.com

January 5, 2010

Mr. Ermes Sani
c/o Arquati Company USA Inc.
1433 W. Frankford Rd. – Suite 100
Carrollton, TX 75007
*(All copied parties listed below.)*

Dear Sir:

In subsequent examination of the transactions effectuated December 1, 2009 pertaining to the Trademark License Agreement, counterpart of two Asset Purchase Agreements also with effective date December 1, 2009, engaging Arquati SRL (Italy), Arquati Company USA, Corradi USA Inc. and Universal Wood Moulding Inc., Change Group Americas has been hereby retained to serve any and all interests of Arquati SRL (Italy) in the United States, including the dispute of the legitimacy and validity of the agreements aforesaid.

In brief, Mr. Alfredo Bertone was appointed and authorized as Liquidator of the companies pertaining to Arquati SRL who, in turn, yielded Power of Attorney to Mr. Ermes Sani, and acting only in the interest of the Arquati SRL companies, Mr. Ermes Sani was to liquidate and/or sell said companies at best value, thereby removing the President(s) of these companies as part of the conditions of the liquidation process. Evidence demonstrates that not only were the aforenamed agreements in direct defiance of the sanctions in which under no circumstances was the licensing of the Arquati SRL Trademark negotiable or remotely considered to be negotiable, but that said agreements are also in violation of said sanctions and Mr. Sani's Power of Attorney and fiduciary responsibility. Usurping the basic directives under his Power of Attorney, Mr. Sani and other parties acted illicitly and inappropriately, thus causing any and all parts of the abovementioned agreements to be considered null, void and invalid for any and all purposes. <u>The Arquati SRL Trademark remains the sole property of Arquati SRL.</u>

Concerning the above imputed grievances, you are accordingly notified that Change Group Americas has retained **Greenberg Traurig LLP** to commence any action necessary in the United States to protect the assets of Arquati SRL and its shareholders. Such actions could include, but are not limited to, a law suit in a United States federal court instituted <u>against the Officers, Board of Directors and fiduciaries of Arquati USA, including Alberto Tanzi and Ermes Sani, acting as President of Arquati Company USA, and against any and all parties nominated in this letter</u>, for breach of fiduciary duty, corporate theft, unjust enrichment, conflict of interest, and to thereby void any sales transactions between Arquati Company USA and third parties as fraudulent conveyances, outside the scope of Sani's authority and as an ultra vires act, and a possible foreign proceeding under Chapter 15 of the United States Bankruptcy Code.

Until a definitive resolution is obtained, you are further advised to: **a)** desist from using the Arquati SRL Trademark; **b)** alert all pertinent third parties involved of this notification and effects, thereof; and **c)** immediately remove any information from marketing and/or other materials, including websites, pertaining to the acquisition of Arquati Company USA and/or merger of Arquati Company USA with Corradi USA Inc. and/or Universal Wood Moulding Inc.

Furthermore and pursuant to our agreement with Arquati SRL, **Change Group Americas will audit** the activities of Arquati Company USA, and herewith petitions you to provide full disclosure of and substantiate all financial decisions, expenses, transactions and/or claims made prior to December 1, 2009, as a company of and pertaining to Arquati SRL. To commence the process, we request: tax returns for years 2007 and 2008, and interim year-end financials (balance sheet, profit and loss statement and statement of cashflow) for the year 2009;

International HQ   111 John Street, 19th Floor   New York, NY 10038
Main: 212.96CHGUS   Toll Free: 877.223.0920   F: 212.962.4478

Page 37

*Page 2*
*Sani, Ermes*

additionally, we will require all bank statements for any bank accounts in which Arquati Company USA is an authorized signatory for years 2007-2009. The information should be sent to our offices within 10 business days

of receipt of this notification. If Arquati Company USA adopted a fiscal-year reporting, please advise otherwise and add to the above request all necessary interim information and data. Failure to comply with this requisition will result in immediate action.

Finally, we request a meeting with you within 10 business days either at the Arquati Company USA facility in Texas or at our offices in New York to make one final attempt to discuss and resolve this matter. Please acknowledge receipt and confirmation of the location, date and time of this meeting within 48 hours of receipt of this notification. Failure to respond and/or concert a meeting with us will force us to take immediate legal action on behalf of Arquati SRL.

I can be reached at (212) 962-4487, ext. 106 to further discuss the meeting arrangements. Should you have any questions, please do not hesitate to contact me.

Sincerely,

Zeynep Ivet Bandirma, Director
Change Group Americas

| Original notifications presented to: | | Courtesy Copies presented to: |
|---|---|---|
| Arquati Company USA Inc.<br>1433 W. Frankford Rd. -- Suite 100<br>Carrollton, TX 75007 | Mr. Jon Bromberg<br>c/o Universal Wood Moulding Inc.<br>21139 Centre Point Pkwy.<br>Santa Clarita, CA 91350 | Dr. Beverly Lubit, Shareholder<br>Greenberg Traurig LLP<br>200 Park Avenue<br>Florham Park, NJ 07032 |
| Corradi USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007 | | Dr. Christian Visdomini, CEO<br>Change Group Americas<br>(Internal) |
| Universal Wood Moulding Inc.<br>21139 Centre Point Pkwy.<br>Santa Clarita, CA 91350 | | Ms. Melissa Murillo, Implementation Director<br>Change Group Americas<br>(Internal) |
| Mr. Alberto Tanzi<br>c/o Arquati Company USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007 | | Compliance Department<br>Change Group Americas<br>(Internal) |
| Mr. Alberto Tanzi<br>c/o Corradi USA Inc.<br>1433 W. Frankford Rd. – Suite 100<br>Carrollton, TX 75007 | | Massimiliano Ratti, Esq.<br>Studio Legale Associato Messuri Ratti e C.<br>Via XX Settembre, 66<br>19121 La Spezia<br>Italy |
| | | Mr. Alberto Bertone<br>c/o Studio Legale Associato Messuri Ratti e C.<br>(Ibidem) |

International HQ    111 John Street, 19th Floor    New York, NY 10038
Main: 212.96CHGUS   Toll Free: 877.223.0920   F: 212.962.4478

# EXHIBIT G

*Studio Legale*

*Messuri – Ratti – Trusendi & C.*

*Professionisti Associati*

*Avv. Paolo Messuri*
*Avv. Massimiliano Ratti*
*Avv. Mirco Trusendi*
*Avv. Cristina Taccomani*
*Avv. Daria Basso*
*Avv. Luca Temiani*
*Avv. Claudio Imperato*

La Spezia, 14.1.2010

Spett.le
**CORRADI SPA**
Via G. Brini 39
40128 – Bologna -

Tramite telefax 0514188400

*Arquati/Corradi*

Formulo la presente in nome e per conto della Arquati Srl in Liquidazione, la quale mi espone l'evidenza di reiterati episodi di concorrenza sleale e di natura parassitaria, che sarebbero stati posti in essere dalla Vostra Società, a mezzo dell'illegittimo utilizzo del dominio www.arquatiusa.it [laddove rinvia la visita al sito www.corradi.eu, riconducibile alla Vostra Società].

In particolare è emerso che alcuni clienti della mia mandante, intercettati con la spendita del nome "*arquati*", hanno segnalato di avere rilevato l'evidente anomalia e confusione venutasi a determinare sul mercato, richiedendo informazioni sull'accaduto nonché sui rapporti arquati/corradi.

Appare, pertanto, evidente la Vostra volontà di stornare alcuni contratti e sviare la clientela, integrando, pertanto, la suddetta condotta specifiche responsabilità sanzionabili ex artt. 2599 e ss. c.c. nonché ex artt. 124 e ss. cpi.

In ragione di ciò, Vi invito a voler cessare con effetti immediati gli atti di concorrenza sleale posti in essere, riservando, sin d'ora, la mia assistita di comunicarVi l'entità del danno ad oggi cagionato; in difetto di ciò, mi vedrò costretto ad agire in via cautelare la competente sezione marchi e brevetti, al fine di ottenere l'inibitoria giudiziale ed il risarcimento dei danni arrecati.

Resto in attesa di riscontro nei tempi che l'urgenza impone

Distinti Saluti                                Avv. Massimiliano Ratti

*19121 La Spezia – Via XX Settembre 66 – Tel. 0187.21248 - 29652 Fax 0187.257860*
*Milano – P.zza Cavour n. 7 – Tel. 0265544124 – Fax 0245475618 – P.i. 01092660115*
*www.mravvocati.it*

# EXHIBIT H

# ARQUATI ®
[illegible stamps]

## POWER OF ATTORNEY

The undersigned, Alfredo Bertone, born in Carrara (MS - Massa-Carrara) on 01/05/40, and residing at Viale San Bartolomeo No. 513, Tax Code BRTLRD40A05B832A, as the liquidator for Arquati srl in liquidation, and authorized for this purpose as a result of the decision of the Shareholders dated November 4, 2009,

### hereby grants

to Mr. Ermes Sani, born in Calestano on 08/10/46 and residing at Via Picelli No. 11, Felino (PR - Parma), an express mandate to carry out, in the name of and on behalf of the company Arquati srl in liquidation, the following activities:

-    Carry out all the administrative, financial, management and commercial analytical control operations with regard to the companies controlled and owned by Arquati srl in liquidation in foreign territories;
-    Carry out all the administrative, financial, management and commercial analytical control operations with regard to the companies owned by Arquati srl in liquidation in Italy.

Sala Baganza, November 5, 2009

Yours faithfully,
The receiver for Arquati srl in liquidation
Alfredo Bertone
[signature]

   [stamp:] ARQUATI®
   ARQUATI S.r.l. -Via San Vitale, 3
   43038 SALA BAGANZA - PARMA
   Tax Code and VAT no. IT 00217250349

ARQUATI S.r.l. in liquidation
Via San Vitale, 3 - 43038 Sala Baganza - Parma - Italy - Tel. +39 0521 8321 - Fax +39 0521 832382
http://www.arquati.it     email: info@arquati.it
Company Capital €4,975,000.00, fully paid up - Parma REA (Economic and Administrative Register) No. 119883 - M/PR 000788
Tax Code, VAT no. and Parma Business Register No. IT 00217250349



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Cayleigh Powell, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the following document, "Power of Attorney" from Italian into English (US).

Cayleigh Powell

Sworn to before me this
January 27, 2010

Signature, Notary Public

KRISTIN MILORO
Notary Public - State of New York
No. 01MI6212799
Qualified in New York County
Commission Expires Oct 19, 2013
Stamp, Notary Public



THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

# EXHIBIT I

# ARQUATI ®

[stamp:] 11/26/09 [illegible]

## POWER OF ATTORNEY

The undersigned, Alfredo Bertone, born in Carrara (MS - Massa-Carrara) on 01/05/40, and residing at Viale San Bartolomeo No. 513, La Spezia, Tax Code BRTLRD40A05B832A, as liquidator of Arquati srl in liquidation, authorized for this purpose as a result of the decision of the Shareholders dated November 4, 2009,

and

whereas - Arquati srl in liquidation owns 100% of Arquati Company Usa Inc., with headquarters at 1433 W. Frankfort Road, Suite #100, Carrollton, Texas 75007,

In consideration of the above, it is hereby agreed,

### the undersigned hereby grants

to Mr. Ermes Sani, born in Calestano on 08/10/46 and residing at Via Picelli No. 11, Felino (PR - Parma), holder of Italian passport No. AA3218593 issued on May 15, 2009, and expiring on May 14, 2019, an express mandate to carry out in the name of and on behalf of the company Arquati srl in liquidation, the following activities:

- Carry out all the ordinary and extraordinary operations aimed at the sale (at the best conditions that will be deemed as such) of the two company branches (molding and awnings);
- Accept the resignation of the current Chairman, Mr. Alberto Tanzi, of the controlled company, Arquati Company Usa Inc., with headquarters at 1433 W. Frankfort Road, Suite #100, Carrollton, Texas 75007;
- Concurrently nominate as the new President/Managing Director of the company Arquati Company Usa Inc., in the person of the same Ermes Sani, thereby granting him all ordinary and extraordinary administrative powers;
- After obtaining resignation of the aforementioned, implement all the operations aimed at the sale (at the best conditions that will be deemed as such) of the controlled company Arquati Company Usa Inc., with headquarters at 1433 W. Frankfort Road, Suite #100, Carrollton, Texas 75007.

Sala Baganza, November 23, 2009

The receiver for Arquati srl in liquidation
Alfredo Bertone
[signature]

ARQUATI S.r.l. -Via San Vitale, 3
43038 SALA BAGANZA - PARMA
Tax Code and VAT no. IT 00217250349

ARQUATI S.r.l. in liquidation
Via San Vitale, 3 - 43038 Sala Baganza - Parma - Italy - Tel. +39 0521 8321 - Fax +39 0521 832382
http://www.arquati.it       email: info@arquati.it
Company Capital €4,975,000.00, fully paid up - Parma REA (Economic and Administrative Register) No.
119883 - M/PR 000788
Tax Code, VAT no. and Parma Business Register No. IT 00217250349

**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Cayleigh Powell, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the following document, "Power of Attorney" from Italian into English (US).

Cayleigh Powell

Sworn to before me this
January 27, 2010

Signature, Notary Public

KRISTIN MILORO
Notary Public - State of New York
No. 01MI6212799
Qualified in New York County
Commission Expires Oct 19, 2013
Stamp, Notary Public

# EXHIBIT J

*Legal Offices*
*Messuri - Ratti - Trusendi & Co.*
*Associated Professionals*

*Attorney Paolo Messuri*
*Attorney Massimiliano Ratti*
*Attorney Mirco Trusendi*
*Attorney Cristina Saccomani*
*Attorney Daria Basso*
*Attorney Luca Tronconi*
*Attorney Claudia Imparato*

La Spezia, 1/14/2010
*To*
***CORRADI SPA***
Via G. Brini, 39
40128 - Bologna -

By fax 051 418 8400

***Arquati/Corradi***

We are writing in the name of and on behalf of Arquati Srl in liquidation, which presents and explains evidence of reiterated episodes of unfair competition of a parasitic nature that your company has put in place , by means of the illegitimate use of the domain www.arquatiusa.it [which reroutes visitors to the site www.corradi.eu, which is directly associated with your Company].

In particular, it has emerged that certain customers of my client, captured with the misrepresentation of the name *"arquati"*, have informed that they have detected the clear anomaly and confusion created within the market, thereby asking for information about this fact and on the relationship between Arquati and Corradi.

It therefore appears evident your willingness to divert certain contracts and to obtain our clients in this way, therefore, the abovementioned conduct leads to specific liabilities which are subject to sanctions in accordance with arts. 2599 and following of the Italian Civil Code and in accordance with arts. 124 and following of the Industrial Property Code.

As a result of this, I demand that you  cease all the acts of unfair competition implemented with immediate effect reserving as of now the right of my client to communicate to you the damage caused to this date. If you fail to comply, I will be forced to take preliminary legal action at the competent Marks and Patents Office, in order to obtain a court order and compensation for the damages caused.

I await your addressing the issue in a time this urgent matter imposes. I await your address of this matter in an appropriate timeframe given its urgency.

Yours sincerely,

Attorney Massimiliano Ratti

*Via XX Settembre, 66 - 19121 La Spezia - Tel. 0187 21248 - 29652 - Fax 0187 257860*
*Piazza Cavour, 7 - Milan - Tel. 0265544124 - Fax 0245475618 - VAT no. 01092660115*
*www.mravvocati.it*



## TRANSPERFECT

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Pearl Leo, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the following document, "Arquati Matter" from Italian into English (US).

_____

Pearl Leo

Sworn to before me this
Tuesday, January 19, 2010

_____

Signature, Notary Public

KRISTIN MILORO
Notary Public – State of New York
No. 01MI6212799
Qualified in New York County
Commission Expires Oct 19, 2013

Stamp, Notary Public



THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

# EXHIBIT K

FILE NO. 28167                                VOLUME NO. 8905

## SHAREHOLDERS' MEETING MINUTES
### ITALIAN REPUBLIC

On July 13, 2009, at 1.00 PM (one PM)

July 13, 2009.

In the offices in Piazza della Repubblica, 28, Milan.

Before me, ANNA PELLEGRINO, a Notary resident in Milan, registered at the Milan Notary Register, the following person is present:

- PAOLO MORO, born in Milan on May 11, 1963, with domicile for the purposes in Via Pietro Mascagni, 14, Milan.

I, a Notary, am certain of the personal identity of this party, who asks me to draw up these Minutes in his position as Chairman of the Board of Directors of the Company:

"SYNPA S.P.A."

with headquarters in Via Pietro Mascagni, 14, Milan and company capital subscribed and paid up of 12,347,813.00 Euro, Tax Code and Milan Business Register number 05387970964, REA (Economic and Administrative Register) no. 1817552, and for these purposes,

hereby states

that, following a call notice received by the entitled parties on June 19, 2009, the Shareholders' Meeting of this company was called for today, at second call, in order to discuss and decide on the following

AGENDA

Ordinary part

1.    Approval of the financial statements as of December 31, 2008; related and resulting decisions.

2.    Nomination of the Board of Directors, after determining the number of members.

3.    Nomination of the Board of Auditors and determination of the payments.

Extraordinary part

1.    Measures in accordance with art. 2447 of the Italian Civil Code; related and resulting decisions.

2.    Possible liquidation of the company and nomination of the Liquidator.

3.    Possible decision with regard to access to insolvency proceedings.

Considering the above,

PAOLO MORO asks me to certify with this public deed the proceedings of the Shareholders' Meeting and the resulting decisions in relation to the extraordinary part of the Meeting which is held as a direct continuation of the ordinary part of the Meeting which has just concluded.

I, a Notary, accept the request and hereby acknowledge that the Shareholders' Meeting proceeds as follows:

The Meeting is chaired, in accordance with his role indicated above, by PAOLO MORO who, with the consent of the Shareholders' Meeting, asks me, a Notary, to draw up the Minutes.

The Chairman then verifies and declares the following:

- that he himself, as Chairman of the Board of Directors, is present;
- that, on behalf of the Board of Directors, Luigi Ferrando, Filippo Cuneo and, by means of teleconference, Giuseppe Ierace, are present;
- that, on behalf of the Board of Auditors, the Chairman of the Board of Auditors Luca Aurelio Guarna, and the Standing Auditors Luca Tracanella and Vincenzo Simonazzi, are present;
- that all the category A capital shares are duly represented, for 12,133,029.00 Euro (the Chairman states that the analytical list for the participants in the Shareholders' Meeting, indicating the powers of representation, is as follows:
- Synergo Sgr S.p.a., with headquarters in Milan, with 7,119,325 category A shares - as a result of powers of representation granted to Elisa Portaluppi, present by means of teleconference;
- Parà S.p.a., with headquarters in Pontirolo Nuovo, with 2,046,806 category A shares - represented by the Managing Director, Marco Parravicini;
- Cuneo Investimentos - Consultoria e Servicos Sociedade Unipessoal Lda, with headquarters in Madeira, with 1,067,898 category A shares - as a result of powers of representation granted to Elisa Portaluppi, present by means of teleconference;
- MPS VENTURE SGR S.p.A., with headquarters in Florence, in the name of and on behalf of the reserved closed-end equity fund "Emilia Venture", with 1,899,000 category A shares - as a result of powers of representation granted to Vieri Spadoni).

The Chairman hereby declares he has verified the identity and the right to take part of those present and that, therefore, this Shareholders' Meeting, called regularly following the call notice specified above, is validly constituted.

The Chairman moves on to the matters on the Agenda and reminds those present that the financial statements just approved indicated a loss of 28,314,770.00 Euro (twenty eight million, three hundred and fourteen thousand and seven hundred and seventy Euro and zero cent), as a result of which the net equity of the company is negative to the tune of 15,962,969.00 Euro (fifteen million, nine hundred and sixty two thousand and nine hundred and sixty nine Euro and zero cent), so the case covered by art. 2447 of the Italian Civil Code applies.

The floor is taken by the representatives of the shareholders Synergo Sgr S.p.a., Parà S.p.a., Cuneo Investimentos - Consultoria e Servicos Sociedade Unipessoal Lda and MPS VENTURE SGR S.p.A., who state that they do not wish to cover the losses.

The Chairman, considering the declaration of these shareholders, indicates why it is necessary

to liquidate the company, nominate a liquidator, determine his/her powers and identify the criteria for the execution of the liquidation.

The Chairman concludes by submitting for the approval of the Shareholders' Meeting the following

DECISION TEXT

The Shareholders' Meeting

- having heard and approved the communications of the Chairman and having acknowledged the declarations of the shareholders

HEREBY DECIDES

1)      To wind up the Company in advance and to liquidate it with effect from the date of registration at the Milan Business Register.

2)      To appoint a sole liquidator, as follows:

- SANI ERMES, born in Calestano on August 10, 1946, with domicile in Via San Vitale, 3, Castellaro, Sala Baganza (Tax Code SNA RMS 46M10 B408N), an Italian citizen;

and to grant him representation of the company, with free signature rights, as well as all the powers specified by articles 2487, 2489 and 2278 of the Italian Civil Code, including the right to appoint and revoke attorneys for legal and negotiation purposes and agents and representatives in general for certain deeds or categories of deeds, including collection in the name of and on behalf of the shareholders, even after the cancellation of the Company, in relation to all the credits with any parties, including tax credits of any kind.

3) To establish that the liquidation is carried out with the liquidator also assessing the use of insolvency proceedings and granting the liquidator all mandates required so that he complies with all the formalities required.

4) To grant a mandate to the liquidator so that he executes the operations specified by the decisions indicated above, with all the powers required to establish all the detailed conditions and methods for the execution of these operations, with all the rights required for the signing and stipulation of all obligations or deeds required.

The Chairman, then, opens the debate and, as nobody asks for the floor, the decision text specified above is put to the vote and, after counting votes both for and against, is approved unanimously and, therefore, is approved with the majorities required by the Company By-Laws.

The Chairman then declares the Meeting ended at 1.05 PM (five past one PM).

I have read this deed to the party who, at my request, states that it complies with his wishes, approves it and signs it at 1.30 PM (half past one PM).

This deed consists of two four-page sheets partly handwritten and partly typed by me and by a person I trust, for six pages.

Signed PAOLO MORO

Signed ANNA PELLEGRINO

COMPLIANT IN ACCORDANCE WITH ITALIAN DECREE OF FEBRUARY 22, 2007 BY MEANS OF A SOLE ELECTRONIC FORM (MUI).
ELECTRONIC COPY COMPLIANT WITH THE ORIGINAL PAPER DOCUMENT, IN ACCORDANCE WITH ART. 23 OF ITALIAN LEGISLATIVE DECREE OF MARCH 7, 2005, NO. 82.
MILAN, JULY 15, 2009



**TRANSPERFECT**

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BARCELONA
BERLIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
DUBAI
DUBLIN
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MILAN
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
PHOENIX
PORTLAND
PRAGUE
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
STUTTGART
SYDNEY
TOKYO
TORONTO
VANCOUVER
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Crystal Maganzini, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the following document, "Arquati Shareholders Meeting Minutes, November 4, 2009" from Italian into English (US).

Crystal Maganzini

Sworn to before me this
Wednesday January 26, 2010

Signature, Notary Public

KRISTIN MILORO
Notary Public - State of New York
No. 01MI6212799
Qualified in New York County
Commission Expires Oct 19, 2013

Stamp, Notary Public

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016    T 212.689.5555    F 212.689.1059    WWW.TRANSPERFECT.COM

# TAB 2

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| ARQUATI, S.R.L. (IN LIQUIDAZIONE) and ARQUATI COMPANY, USA, INC. | § § § § | CIVIL ACTION NO. |
| *Plaintiffs*, | § § § | |
| v. | § § § | |
| CORRADI USA, INC., ALBERTO TANZI, BEATRICE ARQUATI, ERMES SANI, and UNIVERSAL WOOD MOULDING, INC., | § § § § § | |
| *Defendants.* | § § § | |

---

## DECLARATION OF PATRIZIO POZZOLI IN SUPPORT OF PLAINTIFFS' *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION

---

1.    I, Patrizio Pozzoli, am an attorney at the law firm of Pozzoli Law Firm, located in Parma, Italy.

2.    I understand that this Declaration will be submitted as part of Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction.

3.    Although my primary language is Italian, I am able to read and understand English. I have read and understand this Declaration.

4.    In September 2009, my firm was hired by Ermes Sani ("Sani") to oversee the reorganization of a company called Arquati s.r.l. (the "Reorganization").

5.    At that time, Sani was the court-approved liquidator for the Reorganization.

*NJ 226,836,329v3 1-26-10PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION - PAGE 1*

6.      In October 2009, Sani was asked to resign as liquidator and was replaced by Alferdo Bertone. A true copy of the November 4, 2009 Minutes of the Shareholders' Meeting is attached as Exhibit A. Therefore, as of November 4, 2009, Sani no longer had any authority to act on behalf of Arquati s.r.l. ("Arquati Italy") in any capacity.

7.      I became aware that, after Sani was replaced as liquidator, he was pursuing a buyer for Arquati Company USA, Inc. ("Arquati USA"), a wholly owned subsidiary of Arquati Italy, located in Carrollton, Texas.

8.      In November 2009, I had several meetings and conversations with Sani during which he requested that I prepare a Power of Attorney permitting him to go to Arquati USA on behalf of Arquati Italy.

9.      At Sani's request, I prepared Power of Attorney in draft form and circulated it for approval to the liquidator (Mr. Bertone) and the accountants and other professionals involved in the Reorganization.

10.     The Power of Attorney was approved and signed by Mr. Bertone as liquidator on November 5, 2009. A true copy is attached as Exhibit B.

11.     Shortly thereafter, Sani demanded that I prepare a second Power of Attorney that would discuss specifically the potential sale of Arquati USA. Sani requested the following specific terms: (i) obtaining the resignation of the Arquati USA President, Alberto Tanzi; (ii) having Sani himself assume control of Arquati USA, and (iii) arranging for the sale of Arquati USA.

12.     During our discussions, I made it clear to Sani that the Power of Attorney would require him to report back to Arquati Italy about any possible sale. Sani objected, but I insisted on including this limit on his authority.

NJ 226,836,329v3 1-25-10 PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION - PAGE 2

13. Sani eventually agreed to this limitation, following which I drafted a second Power of Attorney which included language requiring Arquati Italy's approval of the terms and conditions of any proposed transaction. The limiting phrase, repeated twice in the document, is "alle migliori condizioni che saranno ritenute", meaning "at the best conditions that we will deem adequate".

14. As before, the draft was sent to Arquati Italy and its professionals for approval. It was approved and executed by Bertone on November 23, 2009. A true copy is attached as Exhibit C.

15. Unknown to me, Sani had previously signed letters of intent regarding the proposed sale of Arquati USA's assets to Universal Wool Moulding Inc. and & Corradi USA, Inc. I did not know about these proposed transactions until Sani revealed them to Arquati s.r.l.

16. At no time during our discussions did Sani request authority to sell, license or otherwise transfer any rights to the Arquati name and trademark, which are owned by Arquati Italy.

17. Neither Power of Attorney I prepared contains any term authorizing Sani to sell, license, or otherwise transfer any assets of Arquati Italy, including any rights to the Arquati name and trademark.

18. Therefore, Sani had no right to sell, license or otherwise transfer any assets of Arquati Italy, including any rights to the Arquati name or trademark.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

PATRIZIO POZZOLI
AVVOCATO
Parrocinatore in Cassazione
P.le Santaflora, 1 - 43100 PARMA
Tel. 0521.264963 - Fax 0521.522209

Patrizio Pozzoli

Executed on: January 25, 2010 at Pozzoli Law Firm Offices in Parma, Italy

NJ 226,836,329⁄3 1-25-10 PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION - PAGE 3

# EXHIBIT A

N. 28167 DI REP.                        N. 8905 DI RACC.

**VERBALE DI ASSEMBLEA**

**REPUBBLICA ITALIANA**

L'anno duemilanove il giorno tredici del mese di luglio, alle
ore 13.00 (tredici)

13 luglio 2009.

In Milano, nello studio in Piazza della Repubblica n. 28.

Avanti a me ANNA PELLEGRINO, Notaio residente in Milano,
iscritto presso il Collegio Notarile di Milano, è presente:

- MORO PAOLO, nato a Milano l'11 maggio 1963, domiciliato per
la carica in Milano Via Pietro Mascagni n. 14.

Parte della cui identità personale io Notaio sono certo, che
mi richiede di redigere il presente verbale nella sua qualità
di Presidente del Consiglio di Amministrazione della Società:

"SYNPA S.P.A."

con sede in Milano, Via Pietro Mascagni n. 14 e capitale
sottoscritto e versato di euro 12.347.813,00, Codice Fiscale e
numero di iscrizione al Registro delle Imprese di Milano
05387970964, REA n. 1817552 e e a tal fine

premette

che a seguito di avviso di convocazione ricevuto dagli aventi
diritto in data 19 giugno 2009 è stata indetta per oggi in
seconda convocazione l'assemblea della suddetta società per
discutere e deliberare sul seguente

ORDINE DEL GIORNO

Parte ordinaria

1. Approvazione bilancio al 31 dicembre 2008; delibere
inerenti e conseguenti.

2. Nomina del Consiglio di Amministrazione previa
determinazione del numero dei componenti.

3. Nomina del Collegio Sindacale e determinazione degli
emolumenti

Parte straordinaria

1. Provvedimenti ai sensi dell'art. 2447 C.C.; delibere
inerenti e conseguenti.

2. Eventuale messa in liquidazione della società e nomina del
Liquidatore.

3. Eventuale delibera in merito all'accesso a procedura
concorsuale.

Ciò premesso

MORO PAOLO mi richiede di far constare con il presente atto
pubblico dello svolgimento dell'assemblea e delle conseguenti
deliberazioni di parte straordinaria che si tiene in diretta
prosecuzione della parte ordinaria appena conclusasi.

Io Notaio aderisco alla richiesta e do atto che l'assemblea si
svolge come segue:

assume la presidenza, nell'indicata qualità, MORO PAOLO che, con il consenso dell'Assemblea, chiama me Notaio a redigere il verbale.

Dopodichè il Presidente dichiara e accerta:

- che è presente egli stesso nella sua qualità di Presidente del Consiglio di Amministrazione;

- che, per il consiglio di amministrazione sono presenti Ferrando Luigi, Cuneo Filippo e collegato in teleconferenza Ierace Giuseppe;

- che, per il Collegio Sindacale sono presenti il Presidente Guarna Luca Aurelio e i sindaci effettivi Tracanella Luca e Simonazzi Vincenzo;

- che sono debitamente rappresentate tutte le azioni di capitale di categoria A per euro 12.133.029,00 (precisa che l'elenco analitico dei partecipanti all'assemblea con la specificazione delle deleghe è il seguente:

- Synergo Sgr S.p.a. con sede in Milano con n. 7.119.325 azioni di categoria A - per delega conferita a Portaluppi Elisa collegata in teleconferenza;

- Parà S.p.a. con sede in Pontirolo Nuovo con n. 2.046.806 azioni di categoria A - in persona dell'Amministratore Delegato Parravicini Marco;

- Cuneo Investimentos - Consultoria e Servicos Sociedade Unipessoal Lda con sede in Madeira con n. 1.067.898 azioni di categoria A - per delega conferita a Portaluppi Elisa collegata in teleconferenza;

- MPS VENTURE SGR S.p.A. con sede in Firenze in nome e per conto del fondo mobiliare chiuso riservato "Emilia Venture" n. 1.899.000 azioni di categoria A - per delega conferita a Spadoni Vieri).

Il Presidente dichiara di aver accertato l'identità e la legittimazione dei presenti e che pertanto la presente assemblea, regolarmente convocata a seguito del surrichiamato avviso di convocazione è validamente costituita.

Il Presidente passa alla trattazione degli argomenti all'ordine del giorno e ricorda ai presenti che dal bilancio testè approvato è emersa una perdita pari a euro 28.314.770,00 (ventottomilioniottrecentoquattordicimilasettecentosettanta virgola zero zero) per effetto della quale il patrimonio netto della società risulta negativo per euro 15.962.969,00 (quindicimilioninovecentosessantaduemilanovecentosessantanove virgola. zero zero), così ricorrendo la fattispecie di cui all'art. 2447 del codice civile.

Prendono la parola i rappresentanti dei soci Synergo Sgr S.p.a., Parà S.p.a., Cuneo Investimentos - Consultoria e Servicos Sociedade Unipessoal Lda e MPS VENTURE SGR S.p.A. che dichiarano di non voler procedere alla copertura delle perdite.

Il Presidente, in considerazione della dichiarazione resa dai soci, espone le ragioni per le quali si rende necessario

procedere alla messa in liquidazione della società, alla
nomina del liquidatore, alla determinazione dei suoi poteri,
nonchè alla individuazione dei criteri in base ai quali deve
svolgersi la liquidazione.

Il Presidente conclude la propria esposizione sottoponendo
all'approvazione dell'Assemblea il seguente

TESTO DI DELIBERAZIONE

L'Assemblea
- udite ed approvate le comunicazioni del Presidente e preso
atto delle dichiarazioni dei soci

DELIBERA

1) Di sciogliere anticipatamente la Società e metterla in
liquidazione con effetto dalla data d'iscrizione presso il
Registro delle Imprese di Milano.

2) Di nominare un solo liquidatore nella persona di:
- SANI ERMES nato a Calestano il 10 agosto 1946 domiciliato in
Sala Baganza - frazione Castellaro, Via San Vitale n. 3 (Cod.
Fisc. SNA RMS 46M10 B408N), cittadino italiano;
e di conferirgli la rappresentanza della società e con firma
libera oltre a tutti i poteri di cui agli articoli 2487, 2489
e 2278 Cod. Civ., anche la facoltà di nominare e revocare
procuratori ad lites e ad negotia e mandatari in genere per
determinati atti o categorie di atti, nonchè quella di
riscuotere in nome e per conto dei soci, anche dopo la
cancellazione della Società, tutti i crediti verso chiunque
compresi i crediti d'imposta di qualunque natura.

3) Di stabilire che la liquidazione venga effettuata valutando
il liquidatore anche il ricorso all'ammissione ad una
procedura concorsuale e conferendo allo stesso ogni più ampio
mandato affinché questi curi tutte le formalità necessarie.

4) Di dare mandato al liquidatore affinchè abbia a procedere
all'esecuzione delle operazioni conseguenti alle delibere di
cui sopra, con tutti i più ampi poteri per determinare tutte
le condizioni e le modalità di dettaglio per l'esecuzione
delle operazioni stesse con tutte le facoltà occorrenti per la
stipulazione di ogni necessario incombente od atto.

Il Presidente apre quindi la discussione e, nessuno chiedendo
la parola, il testo di deliberazione surriportato viene messo
ai voti e dopo prova e controprova risulta approvato
all'unanimità e pertanto risulta approvato con le maggioranze
conformi a quelle previste dallo statuto.

Dopodiché, il Presidente dichiara chiusa la riunione alle ore
13.05 (tredici e cinque).

Di quest'atto ho dato lettura alla parte che, a mia richiesta,
lo dichiara conforme alla sua volontà, lo approva e lo
sottoscrive alle ore 13.30 (tredici e trenta).

Consta di due fogli scritti in parte a mano in parte a
macchina da me e da persona di mia fiducia per sei facciate.

F.to PAOLO MORO

F.to ANNA PELLEGRINO

ASSOLTO AI SENSI DEL DECRETO 22 FEBBRAIO 2007 MEDIANTE M.U.I.
COPIA SU SUPPORTO INFORMATICO CONFORME AL DOCUMENTO ORIGINALE
SU SUPPORTO CARTACEO, AI SENSI DELL'ART. 23 D.LGS. 7 MARZO
2005 N. 82.
MILANO, 15 LUGLIO 2009

# EXHIBIT B



# ARQUATI®

## PROCURA

Il sottoscritto Alfredo Bertone nato a Carrara(MS) il 05.01.1940 e residente a La Spezia in Viale San Bartolomeo No.513,C.F. BRTLRD40A05B832A,quale liquidatore della Arquati srl in liquidazione,a ciò autorizzato in virtù di delibera assembleare del 4 Novembre 2009

### con la presente conferisce

al Sig. Sani Ermes nato a Calestano il 10.08.1946 e residente a Felino(PR) in Via Picelli No.11,espresso mandato a compiere,in nome e per conto della socìetà Arquati srl in liquidazione,le seguenti attività:

- Effettuare ogni operazione di controllo analitico amministrativo,finanziario,gestionale e commerciale,sulle società controllate e partecipate dalla Arquati srl in liquidazione in territorio estero
- -Effettuare ogni operazione di controllo analitico amministrativo,finanziario,gestionale e commerciale,sulle società controllate e partecipate dalla Arequati srl in liquidazione nel territorio italiano.

Sala Baganza,05 Novembre 2009

In fede

Il liquidatore di Arquati srl in liquidazione

Alfredo Bertone

ARQUATI S.r.l. in liquidazione
Via San Vitale, 3 - 43038 Sala Baganza - Parma - Italy - Tel. +39 0521 8321 - Fax +39 0521 832382
http://www.arquati.it    e-mail: info@arquati.it
Capitale Sociale € 4.975.000,00 I.v. - REA di Parma N.119883 - M/PR 000788
Codice Fiscale , Partita IVA e N. Registro Imprese di Parma  IT 00217250349

# EXHIBIT C

# ARQUATI®

## PROCURA

Il sottoscritto Alfredo Bertone nato a Carrara(MS) il 05.01.1940 e residente a La Spezia in Viale San Bartolomeo No.513,C.F. BRTLRD40A05B832A,quale liquidatore della Arquati srl in liquidazione, a ciò autorizzato in virtù di delibera assembleare del 4 Novembre 2009

e

premesso che Arquati srl in liquidazione detiene il 100% di Arquati Company Usa Inc.,con sede al 1433 W.Frankford Rd,Suite #100,Carrolliton,Texas 75007

Ciò premesso,

#### con la presente conferisce

al Sig. Sani Ermes nato a Calestano il 10.08.1946 e residente a Felino(PR) in Via Picelli No.11,titolare del passaporto italiano No.AA3218593 rilasciato il 15 Maggio 2009 e con scadenza il 14 Maggio 2019,espresso mandato a compiere,in nome e per conto della società Arquati srl in liquidazione,le seguenti attività :

- Effettuare ogni operazione di straordinaria ed ordinaria amministrazione finalizzata alla vendita(alle migliori condizioni che saranno ritenute tali)dei 2 rami di azienda(aste per cornici e tende da sole);
- Accettare le dimissioni dell'attuale Presidente Sig. Alberto Tanzi ,della controllata,Arquati Company Usa Inc.,con sede al 1433 W.Frankford Rd.,Suite #100,Carrollton,Texas 75007
- Nominare contestualmente il nuovo Presidente/Amministratore Unico della società Arquati Company Usa Inc. nella persona dello stesso Ermes Sani conferendogli sin da ora ogni più ampio potere di amministrazione ordinario e straordinario
- Successivamente all'ottenimento delle summenzionate dimissioni,porre in essere ogni operazione finalizzata alla vendita(alle migliori condizioni che saranno ritenute)della controllata Arquati Company Usa Inc.,con sede al 1433 W.Frankkford Rd,Suite #100,Carrolliton,75007 Texas.

Sala Baganza,23 Novembre 2009

Il liquidatore di Arquati srl in liquidazione

Alfredo Bertone

ARQUATI® D r L. - Via San Vitale, 3
43038 SALA BAGANZA - PARMA
Cod.Fisc.e P.IVA IT 00217250340
IN LIQUIDAZIONE

ARQUATI S.r.l. in liquidazione

Via San Vitale, 3 - 43038 Sala Baganza - Parma - Italy - Tel. +39 0521 8321 - Fax +39 0521 832382
http://www.arquati.it    e-mail: info@arquati.it

Capitale Sociale  € 4.975.000,00 i.v.  -  REA di Parma N.119883  -  M/PR.000788
Codice Fiscale , Partita IVA e N. Registro Imprese di Parma   IT 00217250349

# TAB 3

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ARQUATI, S.R.L. (IN LIQUIDAZIONE) and ARQUATI COMPANY, USA, INC. | § | CIVIL ACTION NO. |
| | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| v. | § | |
| | § | |
| CORRADI USA, INC., ALBERTO | § | |
| TANZI, BEATRICE ARQUATI, ERMES | § | |
| SANI, and UNIVERSAL WOOD | § | |
| MOULDING, INC., | § | |
| | § | |
| *Defendants.* | § | |
| | § | |
| | § | |

---

**DECLARATION OF STEFANO MOSCONI IN SUPPORT OF PLAINTIFFS'** *EX PARTE*
**APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO
SHOW CAUSE FOR PRELIMINARY INJUNCTION**

---

1.    I, Stefano Mosconi, am a officer of Imago Italia, located in the city of La Spezia, Italy. Imago Italia is in the business of evaluating and restructuring businesses. I am also the president of M-B group, located in Ceparana di Bolano, Italy. M-B Group produces and sells awnings. I have been involved in the manufacture and commercialization of awnings for approximately twenty three (23) years.

2.    I understand that this Declaration will be submitted as part of Plaintiffs' *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause for a Preliminary Injunction.

3.    Although my primary language is Italian, I am able to read and understand English. I have read and understand this Declaration.

DECLARATION OF STEFANO MOSCONI IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY
INJUNCTION - PAGE 1

*NJ 226,836,303v2 1-25-10*

4.    In August 2009, I was hired by Stefano Calza ("Calza") to help restructure/reorganize an Italian company in liquidation called Arquati s.r.l. ("Arquati Italy"). Prior to that time, Mr. Calza contracted to purchase Arquati Italy in liquidation.

5.    The scope of my engagement includes, but is not limited to: (i) evaluating the performance of all domestic and international branches of Arquati Italy; (ii) forensic accounting; (iii) collaborating with liquidators and professionals involved in the restructuring of Arquati Italy; (iv) assessing and restructuring any existing agreements entered to which Arquati Italy is a party; and (v) hiring and firing Arquati Italy's management and employees. In sum, my goal is to restructure Arquati Italy (including its foreign subsidiaries) and return it to profitability (the "Reorganization").

6.    Arquati Italy is in the business of manufacturing awnings, indoor and outdoor window shades, picture frames and other products.

7.    Arquati Italy currently operates a 300,000 square foot production facility in Italy and foreign subsidiaries in the Czech Republic, Portugal and Carrollton, Texas. Each is a distributor of products made by Arquati Italy.

8.    Arquati Italy's products are sold in approximately 700 stores in Italy and thousands across Europe.

9.    Arquati Italy uses the ARQUATI mark worldwide and in 2009 had approximately $20 million (twenty million dollars) in sales related to the "ARQUATI" trademark and its related entities. We plan an aggressive marketing campaign and expect significant growth in the coming years. The company has committed to invest approximately $1.7 million (one million seven hundred thousand dollars) in 2010 to develop and market the Arquati mark.

**DECLARATION OF STEFANO MOSCONI IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION – PAGE 2**

*NJ 226,836,303v2 1-25-10*

10.    During my work, I determined that Arquati Company, USA, Inc. (located in Carrollton, Texas, "Arquati USA") was the best performing foreign subsidiary of Arquati Italy. The function of Arquati USA was to market and sell "Arquati"-branded merchandise manufactured by Arquati Italy.  In essence, Arquati USA was the U.S. distributor of Arquati Italy's merchandise.

### The Pursuit Of A Buyer For Arquati USA

11.    In August 2009, shortly after being hired, I spoke to Ermes Sani ("Sani") at one of Arquati Italy's factories.  At that time, Sani was the liquidator appointed by the previous ownership for the Reorganization.

12.    During that conversation, Sani told me that Alberto Tanzi ("Tanzi"), who was then the president and CEO of Arquati USA, had offered to buy Arquati USA for USD $3,500,000.  The offer was rejected by Arquati Italy because it was considered too low.

13.    Sani stated that he would like to go to the United States to try and sell Arquati USA to Tanzi for a price in excess of USD $3,500,000.  Sani stated that he was well-suited for this task because he spoke English and was familiar with the United States.

14.    I spoke to Sani again in the early Fall of 2009, after he had taken a trip to the U.S. He advised me that he met with Tanzi and another company called Universal Wood Moulding, Inc. ("Moulding") about the purchase of Arquati USA.  Sani told me that he was confident that he could arrange a sale of Arquati USA for a price in excess of USD $3,500,000.

15.    In October 2009, Sani was asked to resign as liquidator and was replaced by Alberto Bertone.  A true copy of the November 4, 2009 Minutes of the Shareholders' Meeting is attached as Exhibit A.  Therefore, as of November 4, 2009, Sani no longer had any authority to act on behalf of Arquati Italy in any capacity.

**DECLARATION OF STEFANO MOSCONI IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION - PAGE 3**

*NJ 226,836,303v2 1-25-10*

16.    Accordingly, to the extent Sani would continue trying to find a buyer for Arquati USA, it was decided that he would have a limited power of attorney from Mr. Bertone for that purpose.

17.    During November 2009, I was present for several conversations between Mr. Bertone and Sani during which this limited power of attorney was discussed. Mr. Bertone made it clear to Sani during these conversations that Sani's function was to present Arquati Italy with a proposed transaction in excess of USD $3,500,000.

18.    At no time during these conversations was Sani told that he could act unilaterally (i.e., sell any assets without the express approval of Mr. Bertone). As well, the subject of conversation was limited to the assets of Arquati USA. There was no discussion of any sale or licensing of any assets owned by Arquati Italy -- including the "ARQUATI" mark.

**The Unauthorized, Undisclosed Agreements To**
**Sell Arquati USA And "License" The ARQUATI Mark**

19.    Throughout my contacts with Sani, he always represented that he would be able to secure more than USD $3,500,000 for the sale of Arquati USA.

20.    Eventually, however, a different picture emerged. In early December, 2009, during an in-person meeting with Sani and Mr. Calza, I asked Sani to provide a detailed report of his progress. Sani was evasive at first, but soon admitted that (i) he had already signed agreements to sell Arquati USA to Tanzi and Mouldings; and (ii) the purchase price was far less than USD $3,500,000.

21.    The following day, Sani produced signed copies of two Asset Purchase Agreements and a License Agreement which evidenced the unauthorized sales. Upon reviewing the documents, it immediately became clear that the purchase price was not the only problem:

DECLARATION OF STEFANO MOSCONI IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION - PAGE 4

NJ 226,836.303v2 1-26-10

a.  First, the agreements purport to grant the two "purchasers" a license to the ARQUATI trademark. However, that mark is owned solely by Arquati Italy. Neither Sani nor Arquati USA had any right to sell, license or otherwise dispose of the ARQUATI name or trademark.

b.  Second, the documents indicate that the sale to "Tanzi" was made to an entity named "Corradi USA, Inc." It appears that this is a U.S. subsidiary of Corradi, S.p.A., which is Arquati Italy's largest competitor.

c.  Third, the documents purport to give the "purchasers" the right to bar Arquati Italy from using its brand name -- the "ARQUATI" mark of which it is sole owner -- in the United States.

A true copy of the Asset Purchase Agreement between Arquati USA and Corradi USA, Inc. is attached as Exhibit B. A true copy of the Asset Purchase Agreement between Arquati USA and Universal Wood Moulding, Inc. is attached as Exhibit C. A true copy of the Trademark License Agreement between Arquati USA and Universal Wood Moulding, Inc. is attached as Exhibit D.

22.     In short, instead of arranging the sale of a healthy, U.S. distributor of Arquati products, these alleged transactions seek to destroy the U.S. market for Arquati Italy's products and facilitate the appropriation by its competitor of the ARQUATI mark.

23.     I questioned Sani about the unauthorized transactions, including the apparent licensing of the ARQUATI trademark and related names. Sani would not answer specific questions about the events and ultimately left the room.

24.     Until that final meeting with Sani, neither I nor anyone else at Arquati Italy had any knowledge that Sani had signed any agreements with respect to the sale of Arquati USA or the Arquati name and trademark.

DECLARATION OF STEFANO MOSCONI IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION
FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY
INJUNCTION - PAGE 5

*NJ 226,836,303v2 1-26-10*

**My Prior Experience With Tanzi**

25.    As a result of my twenty-three (23) years of experience in the manufacture and commercialization of awnings, I have been familiar with the Arquati name for many years.

26.    I also have some prior experience with Tanzi. I had a chance encounter with him in China approximately three years ago while visiting a manufacturing facility there for another client. I knew that, at the time, Tanzi was the president of Arquati USA. I also knew that Arquati USA was in the business of selling (not manufacturing) products made by Arquati Italy.

27.    During this chance meeting, Tanzi made two startling admissions. He stated that after the death of his father-in-law (Frank Arquati, founder of Arquati Italy) in 2002, he no longer had any loyalty to Arquati Italy.

28.    Tanzi also admitted to me that that he was making counterfeit Arquati products in a production facility in China.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Stefano Mosconi

Executed on:  January 25, 2010 at Arquati s.r.l. Offices in Parma, Italy

DECLARATION OF STEFANO MOSCONI IN SUPPORT OF PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE FOR PRELIMINARY INJUNCTION – PAGE 6

*NJ 226,836,303v2 1-25-10*

# EXHIBIT A

N. 28167 DI REP.                              N. 8905 DI RACC.

**VERBALE DI ASSEMBLEA**

**REPUBBLICA ITALIANA**

L'anno duemilanove il giorno tredici del mese di luglio, alle
ore 13.00 (tredici)

13 luglio 2009.

In Milano, nello studio in Piazza della Repubblica n. 28.

Avanti a me ANNA PELLEGRINO, Notaio residente in Milano,
iscritto presso il Collegio Notarile di Milano, è presente:

- MORO PAOLO, nato a Milano l'11 maggio 1963, domiciliato per
la carica in Milano Via Pietro Mascagni n. 14.

Parte della cui identità personale io Notaio sono certo, che
mi richiede di redigere il presente verbale nella sua qualità
di Presidente del Consiglio di Amministrazione della Società:

"SYNPA S.P.A."

con sede in Milano, Via Pietro Mascagni n. 14 e capitale
sottoscritto e versato di euro 12.347.813,00, Codice Fiscale e
numero di iscrizione al Registro delle Imprese di Milano
05387970964, REA n. 1817552 e e a tal fine

premette

che a seguito di avviso di convocazione ricevuto dagli aventi
diritto in data 19 giugno 2009 è stata indetta per oggi in
seconda convocazione l'assemblea della suddetta società per
discutere e deliberare sul seguente

ORDINE DEL GIORNO

Parte ordinaria

1. Approvazione bilancio al 31 dicembre 2008; delibere
inerenti e conseguenti.

2. Nomina del Consiglio di Amministrazione previa
determinazione del numero dei componenti.

3. Nomina del Collegio Sindacale e determinazione degli
emolumenti

Parte straordinaria

1. Provvedimenti ai sensi dell'art. 2447 C.C.; delibere
inerenti e conseguenti.

2. Eventuale messa in liquidazione della società e nomina del
Liquidatore.

3. Eventuale delibera in merito all'accesso a procedura
concorsuale.

Ciò premesso

MORO PAOLO mi richiede di far constare con il presente atto
pubblico dello svolgimento dell'assemblea e delle conseguenti
deliberazioni di parte straordinaria che si tiene in diretta
prosecuzione della parte ordinaria appena conclusasi.

Io Notaio aderisco alla richiesta e do atto che l'assemblea si
svolge come segue:

assume la presidenza, nell'indicata qualità, MORO PAOLO che, con il consenso dell'Assemblea, chiama me Notaio a redigere il verbale.

Dopodichè il Presidente dichiara e accerta:
- che è presente egli stesso nella sua qualità di Presidente del Consiglio di Amministrazione;
- che, per il consiglio di amministrazione sono presenti Ferrando Luigi, Cuneo Filippo e collegato in teleconferenza Ierace Giuseppe;
- che, per il Collegio Sindacale sono presenti il Presidente Guarna Luca Aurelio e i sindaci effettivi Tracanella Luca e Simonazzi Vincenzo;
- che sono debitamente rappresentate tutte le azioni di capitale di categoria A per euro 12.133.029,00 (precisa che l'elenco analitico dei partecipanti all'assemblea con la specificazione delle deleghe è il seguente:
- Synergo Sgr S.p.a. con sede in Milano con n. 7.119.325 azioni di categoria A - per delega conferita a Portaluppi Elisa collegata in teleconferenza;
- Parà S.p.a. con sede in Pontirolo Nuovo con n. 2.046.806 azioni di categoria A - in persona dell'Amministratore Delegato Parravicini Marco;
- Cuneo Investimentos - Consultoria e Servicos Sociedade Unipessoal Lda con sede in Madeira con n. 1.067.898 azioni di categoria A - per delega conferita a Portaluppi Elisa collegata in teleconferenza;
- MPS VENTURE SGR S.p.A. con sede in Firenze in nome e per conto del fondo mobiliare chiuso riservato "Emilia Venture" n. 1.899.000 azioni di categoria A - per delega conferita a Spadoni Vieri).

Il Presidente dichiara di aver accertato l'identità e la legittimazione dei presenti e che pertanto la presente assemblea, regolarmente convocata a seguito del surrichiamato avviso di convocazione è validamente costituita.

Il Presidente passa alla trattazione degli argomenti all'ordine del giorno e ricorda ai presenti che dal bilancio testè approvato è emersa una perdita pari a euro 28.314.770,00 (ventottomilionitrecentoquattordicimilasettecentosettanta virgola zero zero) per effetto della quale il patrimonio netto della società risulta negativo per euro 15.962.969,00 (quindicimilioninovecentosessantaduemilanovecentosessantanove virgola zero zero), così ricorrendo la fattispecie di cui all'art. 2447 del codice civile.

Prendono la parola i rappresentanti dei soci Synergo Sgr S.p.a., Parà S.p.a., Cuneo Investimentos - Consultoria e Servicos Sociedade Unipessoal Lda e MPS VENTURE SGR S.p.A. che dichiarano di non voler procedere alla copertura delle perdite.

Il Presidente, in considerazione della dichiarazione resa dai soci, espone le ragioni per le quali si rende necessario

procedere alla messa in liquidazione della società, alla nomina del liquidatore, alla determinazione dei suoi poteri, nonchè alla individuazione dei criteri in base ai quali deve svolgersi la liquidazione.

Il Presidente conclude la propria esposizione sottoponendo all'approvazione dell'Assemblea il seguente

TESTO DI DELIBERAZIONE

L'Assemblea

- udite ed approvate le comunicazioni del Presidente e preso atto delle dichiarazioni dei soci

DELIBERA

1) Di sciogliere anticipatamente la Società e metterla in liquidazione con effetto dalla data d'iscrizione presso il Registro delle Imprese di Milano.

2) Di nominare un solo liquidatore nella persona di:

- SANI ERMES nato a Calestano il 10 agosto 1946 domiciliato in Sala Baganza - frazione Castellaro, Via San Vitale n. 3 (Cod. Fisc. SNA RMS 46M10 B408N), cittadino italiano;

e di conferirgli la rappresentanza della società e con firma libera oltre a tutti i poteri di cui agli articoli 2487, 2489 e 2278 Cod. Civ., anche la facoltà di nominare e revocare procuratori ad lites e ad negotia e mandatari in genere per determinati atti o categorie di atti, nonchè quella di riscuotere in nome e per conto dei soci, anche dopo la cancellazione della Società, tutti i crediti verso chiunque compresi i crediti d'imposta di qualunque natura.

3) Di stabilire che la liquidazione venga effettuata valutando il liquidatore anche il ricorso all'ammissione ad una procedura concorsuale e conferendo allo stesso ogni più ampio mandato affinché questi curi tutte le formalità necessarie.

4) Di dare mandato al liquidatore affinchè abbia a procedere all'esecuzione delle operazioni conseguenti alle delibere di cui sopra, con tutti i più ampi poteri per determinare tutte le condizioni e le modalità di dettaglio per l'esecuzione delle operazioni stesse con tutte le facoltà occorrenti per la stipulazione di ogni necessario incombente od atto.

Il Presidente apre quindi la discussione e, nessuno chiedendo la parola, il testo di deliberazione surriportato viene messo ai voti e dopo prova e controprova risulta approvato all'unanimità e pertanto risulta approvato con le maggioranze conformi a quelle previste dallo statuto.

Dopodichè, il Presidente dichiara chiusa la riunione alle ore 13.05 (tredici e cinque).

Di quest'atto ho dato lettura alla parte che, a mia richiesta, lo dichiara conforme alla sua volontà, lo approva e lo sottoscrive alle ore 13.30 (tredici e trenta).

Consta di due fogli scritti in parte a mano in parte a macchina da me e da persona di mia fiducia per sei facciate.

F.to PAOLO MORO

F.to ANNA PELLEGRINO

ASSOLTO AI SENSI DEL DECRETO 22 FEBBRAIO 2007 MEDIANTE M.U.I.
COPIA SU SUPPORTO INFORMATICO CONFORME AL DOCUMENTO ORIGINALE
SU SUPPORTO CARTACEO, AI SENSI DELL'ART. 23 D.LGS. 7 MARZO
2005 N. 82.
MILANO, 15 LUGLIO 2009

# EXHIBIT B

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") is made and entered into effective the 1st day of December, 2009, by and among Arquati Company USA, a Texas corporation ("Seller"), Arquati S.r.l, an Italian company ( for the limited purposes set forth in numbered sections 1(a)(6), 5(e), 5(h) and 9 of this Agreement) and Universal Wood Moulding, Inc., a California corporation ("Buyer") (Seller and Buyer are sometimes hereinafter referred to individually as a "party" and jointly as the "parties") in consideration of the mutual agreements as follows:

## RECITALS:

A.    Seller is engaged in the business of designing, producing and distributing picture frame moldings (the "Moulding Business"), among other lines of business.

B.    The parties previously entered into that certain letter of intent (the "LOI") dated effective September 14, 2009, pursuant to which Seller agreed to sell certain assets related to the Moulding Business to Buyer and the parties also previously entered into that certain "Escrow Agreement" dated _____, 2009 with Brown McCarroll, L.L.P. ("BMc") as the escrow agent pursuant to which Buyer has deposited $100,000 with BMc to hold in escrow pursuant to the terms of the Escrow Agreement( the " BMc Escrow Funds").

C.    Seller desires to sell to Buyer and Buyer desires to purchase from Seller certain (but not all or substantially all) of the assets owned by Seller relating to the Moulding Business (but not other lines of business of Seller), on the terms and conditions set forth herein.

D.    The assets to be purchased by Buyer are subject to multiple liens in favor of JP Morgan Chase Bank, NA (the " Chase Liens") and Seller will take such actions as are necessary to cause the Chase Liens to be removed in connection with the transfer of the assets.

**NOW, THEREFORE, IT IS AGREED**, in consideration of the mutual promises and obligations set forth in this Agreement, the parties hereto adopt and make this Agreement and prescribe the terms and conditions hereof and the manner and basis of carrying it into effect which shall be as follows:

1.    THE PURCHASE AND SALE.

(a)    Seller shall sell, assign, transfer and convey to Buyer free and clear of all mortgages, liens, pledges, charges, restrictions, defects of title, security interests, or any other encumbrances or rights of others all of Seller's right, title and interest to following assets of the Moulding Business of Seller (the "Purchased Assets"):

Asset Purchase Agreement
Signature copy
December 1, 2009

## ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") is made and entered into effective the 1st day of December, 2009, by and among Arquati Company USA, a Texas corporation ("Seller"), Arquati S.r.l, an Italian company ( for the limited purposes set forth in numbered sections 1(a)(6), 5(e), 5(h) and 9 of this Agreement) and Universal Wood Moulding, Inc., a California corporation ("Buyer") (Seller and Buyer are sometimes hereinafter referred to individually as a "party" and jointly as the "parties") in consideration of the mutual agreements as follows:

### RECITALS:

A.    Seller is engaged in the business of designing, producing and distributing picture frame moldings (the "Moulding Business"), among other lines of business.

B.    The parties previously entered into that certain letter of intent (the "LOI") dated effective September 14, 2009, pursuant to which Seller agreed to sell certain assets related to the Moulding Business to Buyer and the parties also previously entered into that certain "Escrow Agreement" dated _____, 2009 with Brown McCarroll, L.L.P. ("BMc") as the escrow agent pursuant to which Buyer has deposited $100,000 with BMc to hold in escrow pursuant to the terms of the Escrow Agreement( the " BMc Escrow Funds").

C.    Seller desires to sell to Buyer and Buyer desires to purchase from Seller certain (but not all or substantially all) of the assets owned by Seller relating to the Moulding Business (but not other lines of business of Seller), on the terms and conditions set forth herein.

D.    The assets to be purchased by Buyer are subject to multiple liens in favor of JP Morgan Chase Bank, NA (the " Chase Liens") and Seller will take such actions as are necessary to cause the Chase Liens to be removed in connection with the transfer of the assets.

**NOW, THEREFORE, IT IS AGREED**, in consideration of the mutual promises and obligations set forth in this Agreement, the parties hereto adopt and make this Agreement and prescribe the terms and conditions hereof and the manner and basis of carrying it into effect which shall be as follows:

1.    THE PURCHASE AND SALE.

(a)    Seller shall sell, assign, transfer and convey to Buyer free and clear of all mortgages, liens, pledges, charges, restrictions, defects of title, security interests, or any other encumbrances or rights of others all of Seller's right, title and interest to following assets of the Moulding Business of Seller (the "Purchased Assets"):

(1)    All inventory of Seller located in Seller's Dallas, Texas warehouse along with consignment inventories of Seller located at New Jersey Frame in Patterson, New Jersey and at J Orr in San Leandro, California  existing on the Closing Date (the "Moulding Business Inventory Assets"). Moulding Business Inventory Assets will be determined by a physical count to be taken by representatives of Buyer and observed by  representatives of Seller. When completed  a list of the Moulding Business Inventory Assets shall be attached to this Agreement as Schedule 1(a)(1) the "Final Moulding Business Inventory Asset List");

(2)    All of Seller's accounts receivable attributable solely to the Moulding Business ("Moulding Business Accounts Receivable") as of the end of business on the Closing Date. When completed a list of the Moulding Business Accounts Receivable shall be attached to this Agreement as Schedule 1(a)(2) ;

(3)    All warehouse machinery and equipment identified in the Comprehensive Depreciation GAAP list dated December 31, 2008, a copy of which has been provided to Buyer, as well as all of Seller's trade show equipment specific to Seller's Molding Division (collectively the "Covered Equipment"). A list of the Covered Equipment is attached to this Agreement as Schedule 1(a)(3). No computer, software, office furniture or other equipment owned by Seller other than the Covered Equipment is included in the Purchased Assets;

(4)    Seller's customer list with respect to the Moulding Business("Moulding Business Customer List").A copy of Seller's Moulding Business Customer List is attached to this Agreement as Schedule 1(a)(4);

(5)    All of 1) Seller's physical inventory of advertising and marketing materials including, but not limited to, catalogues, brochures, and art work for trade magazines related to the Moulding Business in Seller's inventory on the Closing Date  (the "Advertising Materials Physical Inventory")   and 2) pictures and databases of the products of the division of Seller in which the Moulding Business is run which pictures and databases are depicted on  the date of this Agreement and on the Closing Date on Seller's website (the "Advertising Materials Web Inventory").; provided, however, that (A) the cost of extracting, manipulating and re-using the pictures and information in the Advertising Materials  Web Inventory will be the sole responsibility of and at the cost of Buyer and (B) the website address (www.arquatiusa.com) and any other pictures and/or information not related to the Moulding Business depicted on the Closing Date on Seller's website are excluded from the transaction described in this Agreement and are not part of the Purchased Assets;

(6)    Subject to the provisions of this subsection, Seller and Arquati S. r. l. grant to Buyer the exclusive, perpetual, royalty free, non cancellable, transferable license and right to to use the ARQUATI name( " Intellectual Property") in the territories of North American and South American specifically for the picture framing market (moulding length, frames, mirrors, photo frames, accessories, and fabrication equipment and the right  to use the name in Buyer's

corporate/trade name, product line etc.; provided that Buyer will use and depict the name ARQUATI with a different character font (clearly recognizable as different) than the one currently used as of the Closing Date by Arquati S.r.l., and the design logo that is currently trademarked and registered by Arquati S.r.l in various jurisdictions worldwide and which design and jurisdictions of registration are set forth on Schedule 1(a)(6) to this Agreement.

(7)     Seller's right to the telephone number 800-527-0421 which Seller shall transfer to Buyer provided, however, that any costs associated with the transfer of this telephone number to Buyer shall be at the sole cost and expense of Buyer.

(b)     All of Seller's assets other than the Purchased Assets shall be retained by Seller, and not sold to Buyer hereunder.

(c)     Seller has advised Buyer that on the Closing Date Corradi USA, Inc. will be a party to that certain lease dated January 6, 1995, with Fremont Funding (Texas), as assigned to Texas Dugan Limited Partnership ("Landlord") and as amended (the "Space Lease"), pursuant to which Corradi shall have leased from Landlord certain space located in Frankford Distribution Center II in Carrollton, Texas (the "Building"), consisting of approximately 67,700 square feet of rentable area in the Building with Duke Weeks ("Landlord") for approximately 67,600 square feet located at 1433 West Frankford Road, Carrolton, Texas 75007( the "Frankfort Road Premises"). Effective as of the Closing Date, Seller shall have caused Corradi to enter into a sublease( the " Space Lease Sublease") with Buyer on terms satisfactory to Buyer  that will allow Buyer to occupy approximately 25,000 square feet of the Frankfort Road Premises  as generally depicted on Schedule 1(C) to this Agreement ("Suite 116") Buyer confirms that the tenant improvement related to the reconfiguration of Suite 116 has been completed to Buyer's satisfaction.

(d) Other than the "Inventory Payment Obligation" (as defined in numbered section 2(a)(iii) below) Buyer is not assuming and Buyer shall not have any responsibility for any "Liabilities and Obligations" of Seller. "Liabilities and Obligations" shall mean any indebtedness, claim, obligation or liability of any kind or nature whatsoever, whether absolute or contingent, known or unknown, liquidated or unliquidated, due or to become due, accrued or not accrued, or otherwise of Seller.

IT IS A CONDITION TO BUYER'S OBLIGATION TO CLOSE THIS TRANSACTION THAT THE SPACE LEASE SUBLEASE SHALL HAVE BEEN ENTERED INTO ON TERMS SATISFACTORY TO BUYER.

2.     PURCHASE PRICE

(a)     The purchase price ("Purchase Price") to be paid by Buyer to Seller for the Purchased Assets  is composed of an "Initial Payment" of $ 700,000 and a "Deferred Payment" "as hereinafter defined). The Purchase Price shall be an amount no greater than $954,000.00 which may be reduced

Asset Purchase Agreement
Signature copy
December 1, 2009

as provided for herein. The Purchase Price may be paid by a combination of cashier's check, wire transfer and release of the BMc Escrow Funds as follows:

(i)    Buyer has heretofore deposited $100,000 with BMc pursuant to the Escrow Agreement and, at Closing, Buyer shall deposit an additional $ 300,000 with BMc and Buyer and Seller shall instruct BMc to pay the total deposited sum of $ 400,000 to J.P Morgan Bank NA to secure release of the Chase Liens; and the $ 400,000 shall be credited against the Purchase Price;

(ii)    An additional $300,000 as part of the Initial Payment of the Purchase Price shall be paid to Seller at Closing by cashier's check and/or wire transfer;

(iii)    The remaining    balance, if any, of the Purchase Price (the "Deferred Payment") shall be paid to Seller within 30 days from Closing by cashier's check and/or wire transfer

The Purchase Price shall be determined as follows:  An estimated purchase price was initially determined by the parties based on a $576,000 component of the Purchase Price being attributed to an estimated value of $ 1,800,000 for the  Moulding Business Inventory  Assets on, and as of, September 9, 2009, (representing a discount of 32% of the actual inventory value of Seller to be purchased by Buyer), a $253,000.00 component of the Purchase Price being attributed to an estimated value for the Moulding Business Accounts Receivable, and a $125,000 component being attributed to the Covered Equipment.

For purposes of calculating the final Purchase Price, the estimated Purchase Price of $ 954,000 shall be adjusted to reflect 32% of the actual value of Moulding Business Asset Inventory (except as provided below) and 55% of the actual value of the  Moulding Business Accounts Receivable of Seller purchased by Buyer with any decrease in the Purchase Price being reflected in the amount of the Deferred Payment. Should the calculation of the Purchase Price result in an amount greater than $ 954,000 then  Buyer may, at Buyer's option, elect to pay the greater amount or to reject additional inventory or accounts receivable  and to pay $ 954,000.

Notwithstanding the foregoing, the corner samples inventory portion of the Moulding Business Inventory  Assets, shall be valued at 10% of indicated cost one linear foot  per corner and any inventory item whose invoice was received by vendors after October 1, 2009, will be deducted (including duty and freight related costs) from the inventory value and paid by Buyer at 65% of value.  Any goods the orders for which have been previously approved by Buyer in consultation with Seller and which have not been received in inventory by the Closing Date will be paid by Buyer and Buyer shall assume all payment obligations to vendors( "Inventory Payment Obligation"). The determination of the inventory value and accounts receivable of Seller purchased by Buyer (and the adjustment of the Purchase Price, if applicable) shall be determined by the parties no later than 30 days following the Closing.

Asset Purchase Agreement
Signature copy
December 1, 2009

(b)    The parties agree to file any required reports under Section 1060 of the Internal Revenue Code of 1986, as amended, and prepare and file federal state and local income tax returns consistent with those allocations.

3.    <u>INTENTIONALLY DELETED</u>.

4.    <u>CLOSING</u>.  This purchase and sale of the Purchased Assets and the transactions provided for in this Agreement shall be closed ("Closing") no later than December 3, 2009 ( the " Closing Date") (time being of the essence).  The Closing shall occur in the offices of Seller's attorneys and in such manner as the parties reasonably agree including, without limitation, facsimile transmission of signatures and documents and wire transfers of funds.

(a)    At Closing and subject to the terms and conditions of this Agreement, Seller shall deliver or cause to be delivered to Buyer the following:

(i)    Bill of Sale and Assignment( a copy of which is attached to this Agreement as Exhibit    ) covering all of the Purchased Assets, duly executed and acknowledged by Seller, conveying all of the Purchased Assets to Buyer free and clear of all mortgages, liens, pledges, charges, restrictions, defects of title, security interests or any other encumbrances of any kind;

(ii)    the Trademark License Agreement in respect of the Intellectual Property on the terms and conditions described in Section 1(a)(6) above

(iii)    Originals (or copies, if only copies are available) of any documentation, evidence, and appropriate books and records of Seller concerning any of the Purchased Assets;

(iv)    Possession of the Purchased Assets;

(v) a copy of the duly adopted resolutions of the Liquidator (which is the Italian person/entity with the requisite authority required to approve the transactions contemplated by this agreement) _ adopting this Agreement and the transactions contemplated in the Agreement in accordance with applicable law; and

(vi)    a UCC -3 release in respect of the Chase Liens.

(b)    At Closing and subject to the terms and conditions of this Agreement, Buyer shall deliver or cause to be delivered to Seller the following:

(i)    cash portion of the Purchase Price pursuant to Section 2(a) in readily available funds; and

Asset Purchase Agreement
Signature copy
December 1, 2009

(ii)    the Trademark License Agreement in respect of the Intellectual Property on the terms and conditions described in Section 1(a)(6) above

5.    SELLER'S REPRESENTATIONS AND WARRANTIES.  Seller represents and warrants to Buyer and  Seller and Arquati S. r. l. with respect to numbered sections 5(e) and 5(h) represent and warrant to Buyer that the following statements are true and correct as of the date of this Agreement and will be true and correct on the Closing Date as if made on the Closing Date:

(a)    Organization and Standing.  Seller is corporation duly organized and validly existing under the laws of the State of Texas, and has all necessary power and authority to carry on its business as and where now conducted.

(b)    Authority of Seller.  The execution of this Agreement by Seller and its delivery to Buyer has been duly approved by the Seller's directors and shareholders, and the "Italian Liquidator's Legal Representative" which is Mr. Ermes Sani and no further action is necessary on the part of Seller to make this Agreement valid and binding upon Seller.  The execution, delivery and consummation of this Agreement by Seller is not contrary to Seller's organizational documents and will not with the passage of time, the giving of notice, or otherwise, result in a violation or breach of, or constitute a material default under, any term or provision of any indenture, mortgage, deed of trust, lease, instrument, order, judgment, decree, rule, regulation, law, contract, agreement, or any other restriction to which the Seller is a party or to which it is subject or bound, nor will it result in the creation of any lien or other charge upon the Purchased Assets, nor will it result in any acceleration or termination of any loan or security interest agreement to which the Seller is a party. No approval or consent of any person, firm or other entity or body is required to be obtained by Seller for the authorization of this Agreement or the consummation of the transaction contemplated herein.    This Agreement constitutes a valid and legally binding obligation of Seller and is enforceable in accordance with its terms. Arquati S.r.l. in liquidazione. constitutes the only shareholder of Seller, and no other persons or entities hold stock or other equity interests in Seller. Seller does not have any subsidiaries, nor does it have any equity interest in any corporation, partnership, limited liability company, or other business entity.

(c)    Title to Purchased Assets.  Seller has good and indefeasible title to, and has sole possession and control of, each of the Purchased Assets, free and clear of all mortgages, liens, pledges, charges, restrictions, defects of title, security interests or other encumbrances of any kind, except for the Chase Lien, and at Closing Seller shall transfer good and indefeasible title to the Purchased Assets to Buyer free and clear of all mortgages, liens, pledges, charges, claims, restrictions, defects of title, security interests or other encumbrances of any kind.

(d)    Litigation.  There is no claim, action, suit, or proceeding, administrative or judicial, pending or, to the best of Seller's knowledge, threatened against Seller or the Purchased Assets which may have a material adverse effect on the Purchased Assets or which would prevent or hinder the consummation of the transactions contemplated by this Agreement. To the best of Seller's



knowledge there is no reasonable basis for any claim, action, suit, proceeding, or investigation against or affecting the Purchased Assets.

(e)     No Infringements.

The Intellectual Property does not, and will not, infringe the intellectual property rights of any third party.

(f)     Contracts.  The Space Lease is in full force and effect and is enforceable by Seller in all material respects in accordance with its terms and, to Seller's knowledge, there has been no event of default on the part of Seller thereunder.

(g)     Survival.  The foregoing representations and warranties shall be true as of Closing and survive the Closing for a period of three (3) years.

(h)     Disclosure.     Notwithstanding any investigation thereof by Buyer, none of the representations and warranties of Seller set forth in this Agreement or in the attached Schedules and the representation and warranty of Arquati S.r.l set forth in this Agreement or in the attached Schedules with respect to the Intellectual Property, contains any untrue statement of a material fact, or omits the statement of any material fact necessary to render the statements made not misleading.

6.     BUYER'S REPRESENTATIONS AND WARRANTIES.  Buyer hereby represents and warrants to Seller that the following statements are true and correct as of the date of this Agreement and will be true and correct on the Closing Date as if made on the Closing Date:

(a)     Status.  Buyer is a corporation duly organized, validly existing and in good standing in the State of California.  All requisite action has been taken by Buyer to authorize and approve the execution and delivery of this Agreement and the carrying out of the obligations of Buyer hereunder, and this Agreement constitutes the binding obligation of Buyer.

(b)     Authority.  Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby constitutes or will constitute a breach of or default under or conflict with Buyer's Articles of Incorporation or Bylaws, or any law, rule, regulation, agreement, deed, contract, mortgage, instrument, indenture, order, decree, or commitment to which Buyer is a party or by which it or its property are bound.

7.     INDEMNIFICATION.

Asset Purchase Agreement
Signature copy
December 1, 2009

(a) Seller shall defend (with counsel acceptable to Buyer), indemnify and hold harmless Buyer against and in respect of any and all loss, cost, damage, liability, obligation, indebtedness, expense, or deficiency suffered by Buyer resulting from any untrue representation, the inaccuracy of any representation, or non-fulfillment of any condition, covenant, warranty or agreement by Seller contained in this Agreement or in any Schedule, Exhibit, or written certificate, document or schedule delivered to Buyer hereunder and except for the Inventory Payment Obligation any Liabilities and Obligations of Seller whenever arising relating to or affecting the Purchased Assets or the operation of the Moulding Business prior to the Closing.

(b) Buyer hereby agrees to indemnify, defend (with counsel reasonably acceptable to Seller) and hold harmless Seller by from and against any and all loss, cost, damage, liability, obligation, indebtedness or expense suffered by Seller relating to the debts, obligations and liabilities of Seller, if any, that were assumed by Buyer pursuant to this Agreement, or resulting from any untrue representation, the inaccuracy of any representation, or non-fulfillment of any condition, covenant, warranty or agreement by Buyer contained in this Agreement or in any Schedule, Exhibit, or written certificate, document or schedule delivered to Seller hereunder.

8. **SELLER PRE-CLOSING COVENANTS.** Buyer and Seller agree as follows with respect to the period between the execution of this Agreement and the Closing.

(a) Each of the parties will use its reasonable efforts to take all action and to do all things necessary in order to consummate and make effective the transactions contemplated by this Agreement.

(b) In connection with the Moulding Business (but not any other lines of Seller's business), Seller shall not engage in any practice, take any action, or enter into any transaction outside the ordinary course of business which is inconsistent with Seller's past custom and practice (including with respect to quantity and frequency).

(d) Buyer and Seller shall each give prompt written notice to the other of any material adverse development causing a breach of any of its own representations and warranties in Sections 5 and 6 above.

(e) Exclusivity. Seller shall not solicit, initiate, or encourage the submission of any proposal or offer from any person relating to the acquisition (regardless of the form of the transaction) of all or any portion of the Moulding Business; and provided, further, that Seller shall promptly inform Buyer if any such offer is received.

9. **NON-COMPETITION.** As a material inducement to Buyer to enter into this Agreement, Seller agrees that (i) neither Seller, Arquati S.r.l. nor any company or entity which any of them controls (control being defined for purposes of this Agreement as the practical ability to control, directly or indirectly, a specified entity) shall, without the express prior written consent of Buyer, which Buyer has no obligation to give, for a period of three (3) years after the Closing, as

Asset Purchase Agreement
Signature copy
December 1, 2009



owner, stockholder, principal, consultant, agent, lender, guarantor, cosigner, investor or trustee of any corporation, partnership, proprietorship, joint venture, association or any other entity of any nature, engage directly or indirectly in the Moulding Business (but no other lines of business) carried on by Seller prior to the date hereof. This Section 9 shall be severable from and independent of any obligation of Seller. Buyer shall have the right, without waiving any other right or remedy Buyer may have at law or in equity, to enforce the terms of this Section 9 by obtaining an injunction against any action or any person acting in violation of this Section 9. Notwithstanding anything herein to the contrary, Seller shall be permitted to continue to conduct its solar protection business (awnings, screens, blinds, shades, patio covers, etc.).

10.    GENERAL PROVISIONS.

(a)    Survival.   All representations, warranties and agreements of Seller and Buyer contained in this Agreement, and all statements contained in any Schedule or any Exhibit hereto, or in any certificate or document delivered hereunder, shall be deemed representations, warranties and agreements by the person or entity making or delivering the Schedule, Exhibit, or such certificate or documents, and all such representations, warranties and agreements shall survive the Closing.

(b)    Notices.  Any and all notices, demands or other communications required or desired to be given hereunder by any party shall be in writing and shall be validly delivered to another party only if served either personally by overnight courier service, by facsimile or electronic mail transmission or if deposited in the United States first class mail, certified return receipt requested, postage prepaid at the address/facsimile/electronic mail numbers set forth below. If such notice, demand or other communication is served personally, then service shall be conclusively deemed made at the time of such personal service. If such notice is sent by facsimile transmission, electronic mail or overnight courier service, service shall be conclusively deemed made at the time of written confirmation of receipt, if on or before 5:00 p.m. local time on a legal business day at the place of receipt, and if not, then on the next legal business day thereafter. If such notice, demand or other communication is given by mail then service shall be conclusively deemed made on the date shown on the return receipt. The address and facsimile number (if any) and electronic mail address (if any) for delivery of notices, demands or other communications for each Party are set forth below. Any party hereto may change its address or provide or change a facsimile number or electronic mail address for the purpose of receiving notices, demands and other communications as herein provided by a written notice given in the manner aforesaid to the other Party or Parties hereto.

If to Seller:                Arquati Company USA.
                             1433 W. Frankford Rd. #100
                             Carrolton, Texas  75007
                             Attn:Ermes Sani
                             Facsimile No. (972) 466-0561
                             Electronic Mail address: ermes.sani@hotmail.it

Asset Purchase Agreement
Signature copy
December 1, 2009

And in the event that Arquati Company USA ceases
to exist then to:
Arquati S.r.l. in liquidazione
Via San Vitale 3
43038 Sala Baganza (PR) – ITALY
Facsimile: +39-0521-832384
Electronic Mail address: ermes.sani@hotmail.it

If to Buyer:                    Universal Wood Moulding Inc.
                                21139 Centre Pointe Pkwy.
                                Santa Clarita, CA 91350
                                Attn: Jon Bromberg
                                Facsimile No: (661) 362-6263
                                Electronic Mail address: jon@universalframing.com

    (c)    Entire Agreement. This Agreement, together with its schedules and exhibits and the Trademark License Agreement constitute the entire agreements between Seller, Buyer and Arquati S.r.l. There have been and there are no covenants, representations or warranties between Buyer, Seller and Arquati S.r.l. other than those expressly stated or referred to in this Agreement, the schedules and all exhibits, the Trademark License Agreement or in any certificate or document delivered pursuant thereto. This Agreement may be amended only by written instrument signed by Seller and Buyer and, if necessary, by Arquati S.r.l.

    (d)    Confidentiality. Buyer and Seller shall keep confidential all information obtained by either of them with respect to the other in connection with this Agreement. All terms, conditions and agreements of this purchase and sale shall be and remain confidential between the parties hereto.

    (e)    Expenses. In connection with the preparation and execution of this Agreement, the parties agree that each shall be responsible for their own costs and expense incurred or assumed for legal fees, accounting fees, or other costs incident to carrying out this Agreement.

    (f)    Severability. If any covenant, condition or other provision of this Agreement is declared by a court of competent jurisdiction to be invalid and not binding on Seller and Buyer, such declaration shall in no way affect the validity of the other any remaining covenants, conditions and provisions of this Agreement.

    (g)    Exhibits and Schedules. All exhibits and schedules referred to are attached hereto and incorporated herein for all purposes.

    (h)    Time. Time is of the essence of this Agreement.

Asset Purchase Agreement
Signature copy
December 1, 2009

(i)     Effect.  The terms, provisions, conditions, obligations and benefits under this Agreement shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

(j)     Attorneys' Fees.  In the event that either party hereto is required to secure the services of an attorney in order to enforce any right or obligation hereunder, the prevailing party shall be entitled to recover reasonable attorneys' fees actually incurred, court costs and other associated expenses from the other party.

(k)     Gender.  As used in this Agreement, words of one gender shall be deemed to include or mean words of a different gender, and singular words shall be deemed to include or mean the plural, all as the context shall require or indicate.

(l)     Law.  This Agreement shall be governed by the laws of the State of Texas.

(m)     Counterparts.  This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, and all such counterparts shall constitute but one and the same instrument.  In proving this Agreement in any judicial or arbitral proceedings, it shall not be necessary to produce or account for more than one such counterpart signed by the party against whom such enforcement is sought.  Delivery of an executed counterpart of this Agreement by facsimile transmission or by e-mail transmission shall be equally effective as delivery of an original executed counterpart of this Agreement.

(n)     Further Assurances.  Each party hereto shall cooperate, shall take such further action and shall execute and deliver such further documents as may be reasonably requested by the other party to carry out the provisions and purposes of this Agreement.

(o)     Headings.  The section headings contained in this Agreement are for convenience only and shall in no way enlarge or limit the scope or meaning of the various and several paragraphs hereof.

(p)     Brokers.  Buyer, on the one hand, and Seller on the other hand, each covenant to the other that all negotiations relating to this Agreement and the transactions contemplated hereby have been conducted without the intervention of any person or entity acting on behalf of either party in such a manner as to give rise to any valid claim against the other for any broker's or finder's commission, fee or similar compensation and said party shall indemnify the other and hold it harmless from any liability or expense arising from any claim for brokerage commissions, finder's fees or other similar compensation based on any agreement, arrangement or understanding made by or on behalf of said party.

(q)     Delays or Omissions.  It is agreed that no delay or omission to exercise any right, power or remedy accruing to any party upon any breach, default or noncompliance by another party

Asset Purchase Agreement
Signature copy
December 1, 2009



under this Agreement shall impair any such right, power or remedy, nor shall it be construed to be a waiver of any such breach, default or noncompliance, or any acquiescence therein, or of or in any similar breach, default or noncompliance thereafter occurring. It is further agreed that any waiver, permit, consent or approval of any kind or character of any breach, default or noncompliance under this Agreement or any waiver of any provisions or conditions of the Agreement must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or otherwise afforded to any party, shall be cumulative and not alternative.

(r)     Assignment: Binding Upon Successors and Assigns. Neither party hereto may assign any of its rights or obligations hereunder without the prior written consent of the other party hereto. This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

(s)     Incorporation of Schedules and Exhibits. All schedules, exhibits and other documents and written information required to be delivered pursuant to this Agreement are incorporated into this Agreement by this reference and are warranted by the party or parties which deliver the same to be accurate and complete in all material respects.

11. POST-CLOSING AGREEMENTS. Buyer and Seller agree that:

(a) Corporate Name. After the Closing Date in the territory of North and South America (the "Territory"), Seller will cease all active business operations together with operational use of Seller's corporate name, fictitious names, or any derivatives thereof (collectively the "corporate name") that relate to the "Picture Framing Market" except for the time necessary for Seller to complete the "closing procedures" of the Company's activity. For purposes of the immediately preceding sentence, closing procedures shall mean the winding-down of the Company's affairs or its liquidation including, but not limited to, collecting its accounts receivable outstanding as of the Closing Date provided, that, parties agree that "closing procedures" shall not include active business activities or the use of the corporate name in any manner relating to the marketing, promotion or sale of products or services in the Picture Framing Market in the Territory. For purposes of the immediately preceding sentences Picture Framing Market shall mean without limitation, moulding length, frames, mirrors, photo frames, picture frame accessories and equipment for picture frame moulding fabrication.
Seller shall, no later than 12 months(but sooner if it completes its closing procedures) after the Closing Date, amend its charter documents and take all other actions necessary to change its name to one sufficiently dissimilar to Seller's name, in Buyer's judgment, to avoid confusion. Seller's covenants under this Section 11 (a) shall survive indefinitely after the Closing.

(b) Moulding Business Accounts Receivable. From and after the Closing, Seller shall promptly forward to Buyer all payments received by Seller attributable to the Moulding Business Accounts Receivable. Seller shall cooperate at no material cost to Seller with Buyer in securing to Buyer the full payment of all the Moulding Business Accounts Receivable including, but not limited to, endorsing to the benefit of Buyer all checks attributable to the Moulding Business Accounts

Asset Purchase Agreement
Signature copy
December 1, 2009

Receivable received by Seller, permitting Buyer to endorse Seller's name on all checks attributable to the Moulding Business Accounts Receivable and by notifying Seller's customers that Buyer has succeed to the Moulding Business.

(c)    Further Assurances.  On the Closing Date, and from time to time thereafter, at the request of Buyer, Seller will execute and deliver to Buyer all such assignments, endorsements and other documents, and take such other action as Buyer may reasonably request in order more effectively to transfer and assign to Buyer the Purchased Assets transferred to Buyer pursuant to this Agreement, to confirm the title of Buyer thereto and to assist Buyer in exercising its rights with respect thereto and under this Agreement.

(d)  Chase Liens Release.  Seller shall cause BMc promptly to record the UCC-3 release in respect of the Chase Liens.

Asset Purchase Agreement
Signature copy
December 1, 2009

EXECUTED on the date first above written.

SELLER:

ARQUATI COMPANY USA

By: _____

Ermes Sani, President

BUYER:

UNIVERSAL WOOD MOULDING, INC.

By: _____

Jon Bormberg, COO

Arquati S.r.l.

By: _____

Ermes Sani, Legal Representative

Asset Purchase Agreement
Signature copy
December 1, 2009

## SCHEDULE 1( C)

## DEPICTION OF SUITE 116

EXHIBIT "A" TO SUBLEASE

Asset Purchase Agreement
Signature copy
December 1, 2009

# EXHIBIT C

# ASSET PURCHASE AGREEMENT

This Asset Purchase Agreement ("Agreement") is made and entered into this 1st day of December, 2009, by and among Arquati Company USA, Inc., a Texas corporation ("Seller"), Arquati S.r.l., an Italian company (for the limited purposes set forth in sections 1(a)(5) and 2(iii) 3rd paragraph of this Agreement) and Corradi USA Inc. ("Buyer") in consideration of the mutual agreements as follows:

## RECITALS:

A.      Seller is engaged in the business of designing, producing and distributing solar protection products (awnings, solar screens, patio covers, shades, blinds, etc.), among other lines of business.

B.      Seller and Buyer (successor in interest of EFFE.A.Int'l LLC) entered into that certain letter of intent (the "LOI") dated effective September 29, 2009, pursuant to which Seller agreed to sell certain assets related to the SolarPro Division to Buyer and also entered into that certain "Escrow Agreement" with Brown McCarroll, L.L.P. ("BMc") as the escrow agent, pursuant to which Buyer has deposited $100,000 with BMc to hold in escrow pursuant to the terms of the Escrow Agreement.

C.      Seller desires to sell to Buyer, and Buyer desires to purchase from Seller, certain of the assets relating to the SolarPro Division as well as certain of the assets of the Moulding Division of Seller, on the terms and conditions set forth herein.

D.      The assets to be purchased by Buyer are subject to multiple liens in favor of JP Morgan Chase Bank, NA (the " Chase Liens") and Seller will take such actions as are necessary to cause the  Chase Liens to be removed in connection with the transfer of the assets.

**NOW, THEREFORE, IT IS AGREED**, in consideration of the mutual promises and obligations, the parties hereto adopt and make this Agreement and prescribe the terms and conditions hereof and the manner and basis of carrying it into effect, which shall be as follows:

1.      THE PURCHASE AND SALE.

(a)      Seller shall sell, assign, transfer and convey to Buyer free and clear of all mortgages, liens pledges, charges, restrictions, defects of title or any other encumbrances or rights of others, all of Seller's right, title and interest to following assets of Seller (the "Assets"):

(1)      All warehouse machinery and equipment of the SolarPro Division identified in the Comprehensive Depreciation GAAP list dated December 31, 2008, a copy of which has been provided to Buyer, of the SolarPro Division, the trade show equipment specific to the SolarPro Division, and other office equipment and furniture owned by the Moulding Division of Seller (including computer hardware, peripherals and software);

4345945.3
1.215

   (2) All of Seller's accounts receivable attributable solely to the SolarPro Division as of the end of business on the Closing Date (hereafter defined);

   (3) Seller's customer list with respect to the SolarPro Division;

   (4) All of Seller's advertising and marketing materials (i.e., catalogs, binders, brochures) related to the SolarPro Division currently in inventory including pictures and databases of the products of the division of Seller in which the SolarPro Division is run, as shown on Seller's website, as well as the rights to Seller's website address (www.arquatiusa.com) and remaining contents;

   (5) Subject to the provisions of this subsection, the right to the "Arquati USA", "Arquati SolarPro" and Awnimation" trade names and logos (the "Intellectual Property"). Buyer shall not be allowed to use the name "Arquati USA" and SolarPro names and logo outside of the North America and South America markets. Seller (as well as its sole Shareholder Arquati S.r.l. and its successors) shall be prohibited from using the "Arquati" name and logos in North America (USA, Canada, Mexico and the Caribbean) and the South America market for a period of three (3) years after Closing in the Solar Protection, Window Coverings, Home Automation, and Patio Furniture/Decoration businesses;

   (6) Seller shall transfer its right to the telephone numbers 800-882-8393, 800-817-0524, 800-778-7329 and 800-817-0525 (as well as the corresponding local telephone numbers to the extent portability is allowed by the telephone provider), provided, however, that any costs associated with the transfer of these telephone numbers to buyer shall be at the sole cost and expense of buyer; and

   (7) The Vehicles (hereafter defined).

  (b) Seller is party to that certain lease with Duke Weeks ("Landlord") for approximately 67,600 square feet located at 1433 West Frankford Road, Carrolton, Texas 75007 ("Space Lease"). It is the intent of Seller that Landlord approves the assignment of the lease for the entire space to Corradi USA, Inc. ("Corradi") and that Corradi will enter into a Sublease Agreement with Universal Framing Products, the Buyer of the Moulding Division of Seller. At Closing, Corradi shall assume all of Seller's obligations under the Space Lease for the period following the Closing Date. It is a condition of Closing (hereafter defined) that Landlord releases Seller from any liability under the Space Lease for the period following the Closing Date.

  (c) Buyer shall be responsible for all invoices from suppliers for goods of Seller that were not received in inventory as of Closing, as well as for the payment of any order of goods Seller has placed that had not been filled by the supplier as of Closing, including any freight, duty and Custom-related costs for goods arriving from overseas.

2

4345945.3
1.215



(d)    At Closing, Buyer shall pay Seller $1,196.04 (the "Car Payoff") in respect of Seller's leases for its 2005 Dodge Ram Truck and the 2005 Dodge Sprinter Van (the "Vehicles"). Seller shall pay such amount to the lessor and, promptly following receipt of title for the Vehicles, transfer title to the vehicles to Buyer.

(e) Other than the "Inventory Payment Obligation" (as defined in numbered section 2(a)(iii) below) Buyer is not assuming and Buyer shall not have any responsibility for any "Liabilities and Obligations" of Seller. "Liabilities and Obligations" shall mean any indebtedness, claim, obligation or liability of any kind or nature whatsoever, whether absolute or contingent, known or unknown, liquidated or unliquidated, due or to become due, accrued or not accrued, or otherwise of Seller.

2.    PURCHASE PRICE.

(a)    The purchase price ("Purchase Price") to be paid by Buyer to Seller for the Puirchased Assets is $874,250.00 (subject to adjustment as provided herein) paid by cashier's check or wire transfer, as follows:

(i)    Buyer has heretofore deposited $100,000 with BMc pursuant to the Escrow Agreement and, at closing, Buyer shall deposit an additional $300,000 with BMc and Buyer and Seller shall instruct BMc to pay the total deposited sum of $400,000 to J.P. Morgan Bank NA to secure release of the Chase Lien; and the $400,000 shall be credited against the Purchase Price.

(ii)    An additional $100,000 of the Purchase Price shall be paid to Seller at Closing;

(iii)    The remaining balance of the Purchase Price ($253,953) (determined in accordance with the formula below) shall be paid to Seller within 60 days from the date of this Agreement (the "Deferred Payment").

The Purchase Price shall be adjusted as follows: The Purchase Price was determined based on a $50,000 component thereof being attributable to the estimated "Arquati Italy" inventory value on, and as of, September 29, 2009, of approximately $250,000 (or a discount to 20% of the actual Arquati USA inventory value of Seller purchased by Buyer), $376,250 component thereof being attributable to the value of all other inventory on, and as of, September 29, 2009, of approximately $1,075,000 (or a discount to 35% of the actual "non-Arquati Italy" inventory value of Seller purchased by Buyer), a $348,000 component thereof being attributable to the estimated receivables of approximately $580,000 (or a discount to 60% of the actual accounts receivable value of Seller purchased by Buyer), a $100,000 component attributable to the assets listed on Seller's December 31, 2008 Comprehensive Depreciation GAAP list. The final Purchase Price shall be adjusted to reflect 20% of Arquati Italy actual inventory value, 35% of non-Arquati Italy actual inventory value and 60% of the actual receivables of Seller purchased by Buyer as of November 30, 2009, with any increase or decrease being reflected in the Deferred Payment.

3

4345945.3
1.215



An additional $17,500 shall be added to the Purchase Price attributable to the 3 extrusions of the "Dallas" and "Zara" awning models and the molds related to the production of the end caps (hood and front bar) of the Dallas Model, Seller and its sole shareholder, Arquati S.r.l., hereby give irrevocable authorization for the concession of use of these dyes to Buyer. It is also understood that Buyer will be allowed to produce the items from these dies and molds and any related accessories to the two awning models listed above wherever it will deem convenient and will not be subject to any constriction (sales, intellectual property claims, territory, etc.) for these items and awning models from Seller and its sole shareholder Arquati S.r.l. and/or its successors.

(b)    The parties agree to file any required reports under Section 1060 of the Internal Revenue Code of 1986, as amended, and prepare and file federal state and local income tax returns consistent with those allocations.

3.    INTENTIONALLY DELETED.

4.    CLOSING. This purchase and sale shall be closed ("Closing") simultaneously with the execution of this Agreement (the "Closing Date"). The Closing shall occur in the offices of Seller's attorneys and in such manner as the parties reasonably agree including, without limitation, facsimile transmission of signatures and documents and wire transfers of funds.

(a)    At Closing and subject to the terms and conditions of this Agreement, Seller shall deliver or cause to be delivered to Buyer the following:

(i)    Bill of Sale and Assignment covering all of the Assets, duly executed and acknowledged by Seller, conveying all of such Assets to Buyer free and clear of any and all liens or encumbrances of any kind;

(ii)    Originals (or copies, if only copies are available) of any documentation, evidence, and appropriate books and records of Seller concerning any of the Purchased Assets; and

(iii)    Possession of the Purchased Assets;

(iv) a copy of the duly adopted resolutions of the Liquidator (which is the Italian person/entity with the requisite authority required to approve the transactions contemplated by this agreement) _adopting this Agreement and the transactions contemplated in the Agreement in accordance with applicable law; and

(v)    a UCC -3 release in respect of the Chase Liens.

(b)    At Closing and subject to the terms and conditions of this Agreement, Buyer shall deliver or cause to be delivered to Seller the following:

4

4345945.3
1.215



funds; and

(i)     cash portion of the Purchase Price pursuant to Section 2(b) in readily available funds; and

(ii)    the Guaranty duly executed by Guarantor.

evidence that Buyer has assumed the Space Lease (and obtained Landlord's release of Seller) as provided in Section 1(c) above.

(iv)    The Car Payoff in readily available funds.

5.      **SELLER'S REPRESENTATIONS AND WARRANTIES.** Seller represents and warrants to Buyer and Seller and Arquati S. r. l. with respect to numbered 1(a)(5) and 2(iii) 3rd paragraph of this Agreement represent and warrant to Buyer that the following statements are true and correct as of the date of this Agreement and will be true and correct on the Closing Date as if made on the Closing Date::

(a)     <u>Organization and Standing</u>. Seller is corporation duly organized and validly existing under the laws of the State of Texas, and has all necessary power and authority to carry on its business as and where now conducted.

(b)     <u>Authority of Seller</u>. The execution of this Agreement by Seller and its delivery to Buyer has been duly approved by the Seller's directors and shareholders, and the "Italian Liquidator's Legal Representative which is Mr. Ermes Sani and no further action is necessary on the part of Seller to make this Agreement valid and binding upon Seller. The execution, delivery and consummation of this Agreement by Seller is not contrary to Seller's organizational documents and will not with the passage of time, the giving of notice, or otherwise, result in a violation or breach of, or constitute a material default under, any term or provision of any indenture, mortgage, deed of trust, lease, instrument, order, judgment, decree, rule, regulation, law, contract, agreement, or any other restriction to which the Seller is a party or to which it is subject or bound, nor will it result in the creation of any lien or other charge upon any assets of Seller, nor will it result in any acceleration or termination of any loan or security interest agreement to which the Seller is a party. No approval or consent of any person, firm or other entity or body is required to be obtained by Seller for the authorization of this Agreement or the consummation of the transaction contemplated herein. This Agreement constitutes a valid and legally binding obligation of Seller and is enforceable in accordance with its terms. Arquati S.r.l. in liquidazione constitutes the only shareholder of Seller, and no other persons or entities hold stock or other equity interests in Seller. Seller does not have any subsidiaries, nor does it have any equity interest in any corporation, partnership, limited liability company, or other business entity.

(c)     <u>Title to Purchased Assets</u>. Seller has good and indefeasible title to, and has sole possession and control of, each of the Assets, free and clear of all mortgages, liens, pledges, charges, restrictions, defects of title or other encumbrances, all claims or rights of others, and at Closing

5

4345945.3
1.215

Seller shall transfer the same to Buyer free and clear of all mortgages, liens, pledges, charges, claims, restrictions, defects of title, or other encumbrances of any kind.

(d)    Litigation.  There is no claim, action, suit, or proceeding, administrative or judicial, pending or, to the best of Seller's current actual knowledge, threatened against Seller which may have a material adverse effect on the Assets or which would prevent or hinder the consummation of the transactions contemplated by this Agreement.

(e)    No Infringements.  Seller has received no written notice that the Intellectual Property violates or infringes on any right belonging to any person, firm, corporation or entity.

(f)    Contracts.  The Space Lease is in full force and effect and is enforceable by Seller in all material respects in accordance with its terms and, to Seller's knowledge, there has been no event of default on the part of Seller thereunder.

(g)    Survival.  The foregoing representations and warranties shall be true as of Closing and survive the Closing for a period of one (1) year.

6.    BUYER'S REPRESENTATIONS AND WARRANTIES.  Buyer hereby represents and warrants to Seller that:

(a)    Status.  Buyer is a Texas duly organized, validly existing and in good standing in the State of Texas.  All requisite action has been taken by Buyer to authorize and approve the execution and delivery of this Agreement and the carrying out of the obligations of Buyer hereunder, and this Agreement constitutes the binding obligation of Buyer.

(b)    Authority.  Neither the execution of this Agreement nor the consummation of the transactions contemplated hereby constitutes or will constitute a breach of or default under or conflict with Buyer's Articles of Incorporation or Bylaws, or any law, rule, regulation, agreement, deed, contract, mortgage, instrument, indenture, order, decree, or commitment to which Buyer is a party or by which it or its property are bound.

7.    INDEMNIFICATION.

(a)    Seller shall defend (with counsel acceptable to Buyer), indemnify and hold harmless Buyer against and in respect of any and all loss, cost, damage, liability, obligation, indebtedness, expense, or deficiency suffered by Buyer resulting from any untrue representation or non-fulfillment of any covenant, warranty or agreement by Seller contained in this Agreement or in any Schedule or Exhibit, or written certificate, document or schedule delivered to Buyer hereunder and except for the Inventory Payment Obligation any Liabilities and Obligations of Seller whenever arising  relating to or affecting the Purchased Assets or the operation of the SolarPro Business prior to the Closing..

6

4345945.3
1.215



(b)    Buyer hereby agrees to indemnify, defend (with counsel reasonably acceptable to Seller) and hold harmless Seller by from and against any and all loss, cost, damage, liability, obligation, indebtedness or expense suffered by Seller relating to the debts, obligations and liabilities of Seller that were assumed by Buyer pursuant to this Agreement, or resulting from any untrue representation or non-fulfillment of any covenant, warranty or agreement by Buyer contained in this Agreement or in any Schedule, Exhibit, or written certificate, document or schedule delivered to Seller hereunder.

8.    NON-COMPETITION.  As a material inducement to Buyer to enter into this Agreement, Seller agrees that (i) neither Seller, Arquati S.r.l. nor any company or entity which any of them controls (control being defined for purposes of this Agreement as the practical ability to control, directly or indirectly, a specified entity) shall, without the express prior written consent of Buyer, which Buyer has no obligation to give, for a period of three (3) years after the Closing, as owner, stockholder, principal, consultant, agent, lender, guarantor, cosigner, investor or trustee of any corporation, partnership, proprietorship, joint venture, association or any other entity of any nature, engage directly or indirectly in the Solar Protection Business (but no other lines of business) carried on by Seller prior to the date hereof.  This Section 8 shall be severable from and independent of any obligation of Seller.  Buyer shall have the right, without waiving any other right or remedy Buyer may have at law or in equity, to enforce the terms of this Section 8 by obtaining an injunction against any action or any person acting in violation of this Section 8.  Notwithstanding anything herein to the contrary, Seller shall be permitted to continue to conduct its Picture Framing Business (moulding length, frames, mirrors, photo frames, accessories, and fabrication equipment).

9.    GENERAL PROVISIONS.

(a)    Survival.  All representations, warranties and agreements of Seller and Buyer contained in this Agreement, and all statements contained in any Schedule or any Exhibit hereto, or in any certificate or document delivered hereunder, shall be deemed representations, warranties and agreements by the person or entity making or delivering the Schedule, Exhibit, or such certificate or documents, and all such representations, warranties and agreements shall survive the Closing for a period of three (3) years.

(b)    Notices.  Any and all notices permitted or required to be given under the terms of this Agreement shall be in writing and may be served by being delivered personally or by mail, postage prepaid, and addressed to the party to be notified at the appropriate address specified below or by prepaid telegram, cablegram or radiogram addressed to the party to be notified at said address or by facsimile transmitted to the facsimile number specified below with an original delivered by regular mail.  Any notice given in any authorized manner shall be effective upon delivery in person to the party to be notified or transmission of an electronic communication or four days after posting in the U.S. Mail, first class postage prepaid.  The mailing addresses of the parties are as follows:

7

4345945.3
1.215



If to Seller:                     Arquati Company USA.
                                  1433 W. Frankford Rd. #100
                                  Carrolton, Texas 75007
                                  Attn:Ermes Sani
                                  Facsimile No. (972) 466-0561
                                  Electronic Mail address: ermes.sani@hotmail.it


                                  And in the event that Arquati Company USA ceases
                                  to exist then to:
                                  Arquati S.r.l. in liquidazione
                                  Via San Vitale 3
                                  43038 Sala Baganza (PR) – ITALY
                                  Facsimile: +39-0521-832384
                                  Electronic Mail address: ermes.sani@hotmail.it


If to Buyer:                      Corradi USA, Inc.
                                  1433 W. Frankford Rd. #100
                                  Carrollton, TX 75007
                                  Attn: Alberto Tanzi
                                  Facsimile No. (972) 466-0561

        The above addresses may be changed by any party by notice given in the manner provided in this Section.

        (c)    <u>Entire Agreement</u>.  This Agreement, the schedules and all exhibits constitute the entire agreement between Seller, Buyer and Arquati S.r.l..  There have been and there are no covenants, representations or warranties between Buyer ,Seller and Arquati S.r.l. other than those expressly stated or referred to in this Agreement, the schedules and all exhibits, or in any certificate or document delivered pursuant thereto.  This Agreement may be amended only by written instrument signed by Seller and Buyer and, if necessary, by Arquati S.r.l..

        (d)    <u>Confidentiality</u>.  Buyer and Seller shall keep confidential all information obtained by either of them with respect to the other in connection with this Agreement.  All terms, conditions and agreements of this purchase and sale shall be and remain confidential between the parties hereto.

        (e)    <u>Expenses</u>.  In connection with the preparation and execution of this Agreement, the parties agree that each shall be responsible for their own costs and expense incurred or assumed for legal fees, accounting fees, or other costs incident to carrying out this Agreement.

        (f)    <u>Severability</u>.  If any covenant, condition or other provision of this Agreement is declared by a court of competent jurisdiction to be invalid and not binding on Seller and Buyer, such declaration shall in no way affect the validity of the other any remaining covenants, conditions and provisions of this Agreement.

                                              8

4345945.3
1.215



(g)     Exhibits and Schedules. All exhibits and schedules referred to are attached hereto and incorporated herein for all purposes.

(h)     Time. Time is of the essence of this Agreement.

(i)     Effect. The terms, provisions, conditions, obligations and benefits under this Agreement shall be binding upon the parties hereto and their respective heirs, legal representatives, successors and assigns.

(j)     Attorneys' Fees. In the event that either party hereto is required to secure the services of an attorney in order to enforce any right or obligation hereunder, the prevailing party shall be entitled to recover reasonable attorneys' fees actually incurred, court costs and other associated expenses from the other party.

(k)     Gender. As used in this Agreement, words of one gender shall be deemed to include or mean words of a different gender, and singular words shall be deemed to include or mean the plural, all as the context shall require or indicate.

(l)     Law. This Agreement shall be governed by the laws of the State of Texas.

(m)     Counterparts. This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same instrument.

(n)     Further Assurances. Each party hereto shall cooperate, shall take such further action and shall execute and deliver such further documents as may be reasonably requested by the other party to carry out the provisions and purposes of this Agreement.

(o)     Headings. The section headings contained in this Agreement are for convenience only and shall in no way enlarge or limit the scope or meaning of the various and several paragraphs hereof.

(p)     Brokers. Buyer, on the one hand, and Seller on the other hand, each covenant to the other that all negotiations relating to this Agreement and the transactions contemplated hereby have been conducted without the intervention of any person or entity acting on behalf of either party in such a manner as to give rise to any valid claim against the other for any broker's or finder's commission, fee or similar compensation and said party shall indemnify the other and hold it harmless from any liability or expense arising from any claim for brokerage commissions, finder's fees or other similar compensation based on any agreement, arrangement or understanding made by or on behalf of said party.

(q)     Delays or Omissions. It is agreed that no delay or omission to exercise any right, power or remedy accruing to any party, upon any breach, default or noncompliance by another party under this Agreement, shall impair any such right, power or remedy, nor shall it be construed to be a

9

4345945.3
1.215

waiver of any such breach, default or noncompliance, or any acquiescence therein, or of or in any similar breach, default or noncompliance thereafter occurring. It is further agreed that any waiver, permit, consent or approval of any kind or character of any breach, default or noncompliance under this Agreement or any waiver of any provisions or conditions of the Agreement must be in writing and shall be effective only to the extent specifically set forth in such writing. All remedies, either under this Agreement or otherwise afforded to any party, shall be cumulative and not alternative.

(r)     Assignment: Binding Upon Successors and Assigns. Neither party hereto may assign any of its rights or obligations hereunder without the prior written consent of the other party hereto. This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

(s)     Incorporation of Schedules and Exhibits. All schedules, exhibits and other documents and written information required to be delivered pursuant to this Agreement are incorporated into this Agreement by this reference and are warranted by the party or parties which deliver the same to be accurate and complete in all material respects.

POST-CLOSING AGREEMENTS. Buyer and Seller agree that:

(a) Solar Protection Business Accounts Receivable. From and after the Closing, Seller shall promptly forward to Buyer all payments received by Seller attributable to the Solar Protection Business Accounts Receivable. Seller shall cooperate at no material cost to Seller with Buyer in securing to Buyer the full payment of all the Solar Protection Business Accounts Receivable including, but not limited to, endorsing to the benefit of Buyer all checks attributable to the Solar Protection Business Accounts Receivable received by Seller, permitting Buyer to endorse Seller's name on all checks attributable to the Solar Protection Business Accounts Receivable and by notifying Seller's customers that Buyer has succeed to the Solar Protection Business.

(b) Further Assurances. On the Closing Date, and from time to time thereafter, at the request of Buyer, Seller will execute and deliver to Buyer all such assignments, endorsements and other documents, and take such other action as Buyer may reasonably request in order more effectively to transfer and assign to Buyer the Purchased Assets transferred to Buyer pursuant to this Agreement, to confirm the title of Buyer thereto and to assist Buyer in exercising its rights with respect thereto and under this Agreement.

(c) Chase Liens Release. Seller shall cause BMc promptly to record the UCC-3 release in respect of the Chase Liens.

10

4345945.3
1.215



EXECUTED on the date first above written.

SELLER:

ARQUATI COMPANY USA, INC.

By: _____

Ermes Sani
President

BUYER:

CORRADI USA, INC.

By: _____

Alberto Tanzi
President

ARQUATI S.r.l. in liquidazione

By: _____

Ermes Sani – Legal Representative

Joining in execution of this agreement for the
purpose of confirming its obligations under Section
1(a)(5) and 2(iii) 3rd paragraph above

11

4345945.3
1.215

# EXHIBIT D

# TRADEMARK LICENSE AGREEMENT

This Trademark License Agreement (this "Agreement") is among Arquati S.r.l. formerly known as Arquati, S.P.A. ("Arquati Srl"), an Italian company, Arquati Company USA ("Arquati USA"), a Texas corporation, and Universal Wood Moulding, Inc. ("Licensee"), a California corporation. As used herein, "Parties" shall mean, collectively, Arquati Srl, Arquati USA and Licensee. The effective date of this Agreement is December 3, 2009.

WHEREAS, Arquati Srl, Arquati USA and Licensee are parties to that certain Asset Purchase Agreement wherein Licensee purchased and received the Purchased Assets (as defined therein), including, without limitation, the license (the "License") for the mark ARQUATI; and

WHEREAS, the Parties desire to enter into this Agreement to formally document the terms and conditions of the License;

NOW THEREFORE, for the mutual promises of the Parties, and other good and valuable consideration, the undersigned agree as follows:

1.    **Definitions**. As used herein, the "Trademark" shall mean ARQUATI. Arquati Srl and Arquati USA (collectively, "Licensor") acknowledge and confirm that Arquati Srl has registered the ARQUATI Trademark (with stylized lettering and logo design) with the United States Patent and Trademark Office [U.S. Reg. No. 1,231,936] (the "U.S. Registration") for a use in connection with "furniture and kits consisting of wood or plastic for making furniture" (IC 20) and "textile curtains for windows, plastic curtains, blankets and table clothes" (IC 24). Arquati Srl represents and warrants to Licensee that Arquati Srl has granted Arquati USA, and Arquati USA has received, the exclusive license to the use of the Trademark in all fields of use.

2.    **Grant of License**. Licensor hereby grants to Licensee and Licensee hereby accepts, an exclusive, perpetual, royalty free, transferable, non-cancellable right and license to use the Trademark in connection with the picture framing market, including, without limitation, moulding length, frames, mirrors, photo frames, picture frame accessories and equipment for picture frame moulding fabrication (collectively, the "Picture Framing Market"). This License is valid for the geographic territories of North America and South America (and for specific clarification, but not as a limitation, will include all the 50 states of the United States, including Alaska and Hawaii) (collectively, the "Territory"). Notwithstanding the preceding, the Parties acknowledge and confirm that the License for use of the Trademark is only for the printed word mark ARQUATI, and specifically, the License does not grant any right of use related to the square logo design (the "Logo") included in the U.S. Registration of the Trademark, and the License does not grant any right of use of the font lettering design (the "Font Type") used in connection with the U.S. Registration of the Trademark. Licensee agrees not to use the Logo or the Font Type in connection with Licensee's use of the Trademark. Licensor shall retain the right to use and license the Trademark within the Territory for purposes outside of the Picture Framing Market and outside of the Territory for any purpose..

TRADEMARK LICENSE AGREEMENT
Signature copy
December 1, 2009
4364106.1
1.215

Page 1

3.    **Permitted Uses of Trademark.**  The License shall permit Licensee to use the Trademark for all purposes in connection with the development, marketing and distribution of products and services in the Picture Framing Market in the Territory, including, without limitation, on the products and services, in marketing materials identifying the products and services and in advertising for the products and services.  Except for the License to Licensee, Licensor shall not grant a license, or permit any use of the Trademark, in the Picture Framing Market in the Territory.

4.    **Use with Tradename.**  Licensor hereby grants Licensee the right, power and authority to use "Arquati" as part of Licensee's tradename.  Licensee shall have the power and authority to change its formal corporate name (including any form of entity utilized by Licensee) to include "Arquati" as part of such name.  Licensor will not object to or oppose Licensee's use of "Arquati" as part of Licensee's tradename.

5.    **Proprietary Rights and Confidentiality.**  Licensor shall use diligent efforts to protect its rights with regard to the Trademark.  Licensor hereby grants Licensee permission and authority to institute legal actions to protect the Trademark (and Licensee's use thereof) from all other infringing use, and Licensee has the right and power to initiate and maintain legal actions against third party infringers making unlawful use of the Trademark.  Licensor agrees to provide reasonable cooperation in connection with any such legal actions.

6.    **Representations and Warranties.**  Licensor represents and warrants to Licensee the following:

    a.    Arquati Srl is the sole owner of the Trademark.  No other party has any ownership interest in the Trademark.

    b.    Arquati USA is the only existing licensee of the Trademark.

    c.    From and after the date of this Agreement, neither Arquati Srl nor Arquati USA shall make any use of the Trademark in connection with the Picture Framing Market in the Territory, and neither Party shall grant any third party rights for such use.

    d.    Each of Arquati Srl and Arquati USA have all the requisite corporate power and authority to enter into this Agreement and to carry out its obligations under this Agreement.

    e.    The execution of this Agreement by Licensor has been duly approved by the Licensor's directors and shareholders, and the "Italian Liquidator's Legal Representative" which is Mr. Ermes Sani and no further action is necessary on the part of Licensor to make this Agreement valid and binding upon Licensor.  The execution, delivery and consummation of this Agreement by Licensor is not contrary to Licensor's organizational documents and will not with the passage of time, the giving of notice, or otherwise, result in a violation or breach of, or constitute a material default under, any term or provision of any indenture,

TRADEMARK LICENSE AGREEMENT
Signature copy
December 1, 2009
4364106.1
1.215

Page 2

mortgage, deed of trust, lease, instrument, order, judgment, decree, rule, regulation, law, contract, agreement, or any other restriction to which Licensor is a party or to which it is subject or bound. No approval or consent of any person, firm or other entity or body is required to be obtained by Licensor for the authorization of this Agreement or the consummation of the transaction contemplated herein.

f.       This Agreement has been duly authorized, executed and delivered by Licensor and constitutes a legal, valid and binding obligation of Licensor, enforceable against Licensor in accordance with its terms.

g.       The Trademark does not, and will not, infringe the intellectual property rights of any third party, and Licensor has not received any notice from any third party alleging such infringement.

7.       **Agreement of Licensor.** Through the execution of this Agreement, the license to Arquati USA for use of the Trademark in connection with the Picture Framing Market shall terminate, except for the time necessary for the "closing procedures" of the Company's activity, up to 12 months after the execution of this Agreement. Closing procedures shall mean the winding-down of the Company's affairs or its liquidation including, but not limited to, collecting its accounts receivable outstanding as of the Closing Date. However, the Parties agree that "closing procedures" shall not include the use of the Trademark in any manner relating to the marketing, promotion or sale of products or services in the Picture Framing Market.

8.       **Indemnification.**

a.       **Indemnification by Licensee.** Licensee shall indemnify and hold harmless Licensor and Licensor's agents, employees, successors and assigns (the "Licensor Related Parties") from and against any and all liabilities, losses, damages, claims, suits and expenses, including, without limitation, reasonable attorney's fees and costs, of whatsoever kind and nature imposed on, incurred by, or asserted against Licensor and the Licensor Related Parties arising out of or related to a breach of this Agreement by Licensee, or Licensee's sale of products bearing the Trademark (other than infringement claims asserted against Licensor related to Licensee's permitted use of the Trademark as described herein, and Licensee shall not provide any indemnification for such claims).

b.       **Indemnification by Licensor.** Licensor shall indemnify and hold harmless Licensee, its agents, employees, successors and assigns (the "Licensee Related Parties") against any and all liabilities, losses, damages, claims, suits and expenses, including, without limitation, reasonable attorneys' fees and costs, of whatsoever kind and nature imposed on, incurred by, or asserted against Licensee and the Licensee Related Parties arising out of or related to a breach of this Agreement by Licensor, a breach of the representations and warranties of Licensor contained herein, and either Party's use of the Trademark.

9.       **Term and Termination.** The term of this Agreement is perpetual.
TRADEMARK LICENSE AGREEMENT
Signature copy
December 1, 2009
4364106.1
1.215

Page 3

**10.    Recording of Agreement.**  Licensor, within fifteen (15) business days from the date of this Agreement, shall record this Agreement of public record in Italy and the United States, to confirm the grant by Licensor of the exclusive license to Licensee, as described herein.  If Licensor fails to timely make this filing, Licensee may make such recording.

**11.    Miscellaneous.**

   **a.    Assignment.**  This Agreement shall be binding upon, and shall inure to the benefit of, all assignees of the Parties.  In addition, if Licensor sells or transfers its equity or assets, the recipient of such equity or assets shall be bound by the terms and conditions of this Agreement.

   **b.    Counterparts Clause.**  This Agreement may be executed in two or more counterparts each of which shall be deemed originals for all purposes.

   **c.    Severability.**  If any term, clause or provision of this Agreement shall be declared invalid, such invalidity shall not affect the validity or operation of any other term, clause or provision.  Such invalid term, clause or provision shall be deemed to have been deleted from this Agreement.

   **d.    Notices.**  All notices, requests, demands and other communications required or permitted under this Agreement shall be deemed to have been duly given and made if in writing and served either by personal delivery to the Party for whom it is intended or the next business day after being deposited with an international courier, bearing the address shown in this Agreement for, or such other address as may be designated in writing hereafter by such Party:

|  |  |
|---|---|
| If to Arquati Srl: | Arquati S.r.l.<br>Via San Vitale 3<br>43038 Sala Baganza (PR) - ITALY<br>Attn. Ermes Sani |
| If to Arquati USA: | Arquati Company USA<br>1433 W. Frankford Rd. #100<br>Carrolton, Texas 75007<br>Attn: Ermes Sani |
| If to Licensee: | Universal Wood Moulding Inc.<br>21139 Centre Pointe Pkwy.<br>Santa Clarita, CA 91350<br>Attn: Jon Bromberg |

   **e.    Integration.**  This Agreement constitutes the entire agreement between the Parties with respect to its subject matter.  It shall supersede all previous proposals, oral and written, agreements, and all other communications between the Parties.  It may not be released, discharged,

TRADEMARK LICENSE AGREEMENT
Signature copy
December 1, 2009
4364106.1
1.215

Page 4

changed or modified except by an instrument in writing signed by a duly authorized representative of each of the Parties.

h.    **Attorneys' Fees.**  The prevailing Party in any legal action related to this Agreement shall be entitled to the recovery of its attorneys' fees and expenses from the losing Party, in addition to any other remedies allowed under this Agreement or applicable law.

i.    **Waiver.**  The failure of either Party to enforce any of the provisions of this Agreement, or the failure to require performance by the other Party of any of the provisions of this Agreement, shall in no way be construed to be a present or future waiver of such provisions, nor in any way affect the validity of either Party to enforce each provision thereafter.  The express waiver by either Party of any provision, condition or requirement of this Agreement shall not constitute a waiver of any future obligation to comply with such provision, condition or requirement.

j.    **Governing Law.**  This Agreement shall be governed by and interpreted pursuant to the laws of Texas and applicable federal law.  Venue for any legal action related to this Agreement shall lie exclusively in Dallas County, Texas.

TRADEMARK LICENSE AGREEMENT
Signature copy
December 1, 2009
4364106.1
1.215

Page 5

IN WITNESS WHEREOF, the undersigned have set their hands.

Arquati, S.r.l.                                          Arquati Company USA

By: _____              By: _____
Name: ERNES SAN                                     Name: ERNES SAN
Title: LEGAL REPRESENTATIVE                   Title: PRESIDENT

Universal Wood Moulding, Inc.

By: _____
Name: JON BROMBERG
Title: C.E.D.

TRADEMARK LICENSE AGREEMENT
Signature copy
December 1, 2009                                                          Page 6
4364106.1
1.215